43860. NATIONAL GYPSUM COMPANY v. WAMMOCK et al.

(353 SE2d 809)

PER CURIAM.

This case has been docketed in this court as certified questions from the United States Court of Appeals for the Eleventh Circuit. The facts and the certified questions, as stated by the certificate from the Eleventh Circuit, are as follows:

"This civil action was commenced by Julian P. Wammock in 1981, approximately three years after his retirement from work as a carpenter. The complaint was filed against sixteen manufacturers and distributors of asbestos-containing products, for damages arising from Mr. Wammock's exposure to asbestos. Mr. Wammock asserted two legal theories of liability — strict liability and negligent failure to warn. In addition to compensatory damages, Mr. Wammock sought to recover against all defendants an award of punitive damages on the grounds that the defendants for a long time were aware of the danger of asbestos exposure but intentionally failed to disseminate such information. All other defendants settled or were dismissed and the case proceeded to trial against National Gypsum Company ('National Gypsum') alone in May 1985.

"The jury returned a verdict for plaintiff of $40,000 in compensatory damages and $250,000 in punitive damages, and National Gypsum appealed from the final judgment entered on that verdict. On appeal, we ordered the certification of certain questions to the Su-

preme Court of Georgia in accordance with Rule 36 [sic][1] of that court. *Wammock v. National Gypsum Company*, 793 F.2d 1518 (11th Cir. 1986). The appellee filed a petition for rehearing, which we treated as a motion for reconsideration and denied by order dated July 21, 1986.

"Mr. Wammock, a life-long carpenter, throughout his career had been exposed in various degrees to asbestos-containing products of numerous manufacturers. His primary but not sole exposure to a National Gypsum product was to joint compound while installing wallboard. National Gypsum's joint compound — sometimes called joint treatment or joint cement, a product used to cover the seams between sheets of wallboard — in the past contained asbestos as one of its constituent ingredients.

"Mr. Wammock's employment as a carpenter began in the shipyards between 1942 and 1946. Thereafter, he worked in the construction trades until his retirement in 1978. In 1981, three years after his retirement, Mr. Wammock was diagnosed as having asbestosis due to his continued exposure to asbestos. At the time of trial, Mr. Wammock was seventy-one years of age.

. . . .

"For present purposes, we need not recount the evidence adduced at trial in detail . . . In short, the appellee contends that the evidence adduced at trial was sufficient such that National Gypsum 'knew or should have known' of the hazards of asbestos before 1972 . . . In contrast, the appellant contends that even if National Gypsum was negligent in failing to extrapolate from the known hazards of high level exposure to the unknown dangers of low level exposure, the fact that it should have known of those dangers is insufficient to support an award of punitive damages under Georgia law."

## Certified Questions

"(1) Can a plaintiff recover punitive damages under Georgia law in asbestos tort litigation where the defendants may be liable for multiple awards of compensatory and punitive damages for the same conduct?

"(2) Was the evidence concerning the conduct of defendant sufficient to justify an award of punitive damages under Georgia law?

"The Georgia Supreme Court will not in any way be bound by this articulation of the questions in consideration of the issues in-

---

[1] Former Rule 36 has been superseded. Rule 36 was the certification rule under previous Rules of the Georgia Supreme Court, 242 Ga. 1001 et seq., eff. August 1, 1979. Under our current rules, 252 Ga. A-1 et seq., eff. July 1, 1984, the certification rule is denominated as Rule 37.

volved . . . ."

1. We respectfully decline to answer the first certified question. Our review of this case shows that the Eleventh Circuit's references to "punitive damages" are intended to mean exemplary damages awarded pursuant to OCGA § 51-12-5, which authorizes, in pertinent part, "additional damages to deter the wrongdoer from repeating the trespass. . . ." The award of punitive damages in this case appears to be the first award of punitive damages in an asbestosis case which has been obtained against National Gypsum, either in the state courts or in federal courts under diversity jurisdiction. Therefore, assuming for the moment that the award of punitive damages was obtained pursuant to § 51-12-5 (see discussion in Divisions 2, 3, and 4, infra), the question whether § 51-12-5 permits *multiple* awards of exemplary damages to deter the wrongdoer from repeating the trespass is anticipatory.

We find that, "[b]ecause of the anticipatory nature of the suit there are no facts presenting a controversy to which this court can apply the provisions of [§ 51-12-5]. In the absence of a factual controversy we believe it to be inappropriate for this court to establish the parameters within which [§ 51-12-5] may or may not be operative." *American Booksellers Assn. v. Webb*, 254 Ga. 399, 401 (2) (329 SE2d 495) (1985).[2]

2. The second certified question asks us to determine the sufficiency of the evidence in this case to support the award of punitive damages. We respectfully decline to answer this question, because the jury instructions did not accurately reflect OCGA § 51-12-5.

Punitive damages are generally regarded as having three purposes: To punish the person doing the wrongful act, to discourage him from similar conduct in the future, and to discourage others from such conduct. Restatement of Torts (2d), § 908 (1). However, in contrast to the general view, the first ground of OCGA § 51-12-5 — "to deter the wrongdoer from repeating the trespass" — is limited to its plain meaning. The sole permissible purpose of that Code section (other than the second ground of § 51-12-5, compensation for wounded feelings, which was not at issue in this case) is the deterrence of the defendant-wrongdoer from similar future conduct. "Under this section the jury is not authorized to assess damages as a punishment for the wrong done." *Johnson v. Morris*, 158 Ga. 403, 405 (123 SE 707) (1924). Furthermore, the statute is not intended to deter

---

[2] We also note that a new Tort Reform Act has been passed by the General Assembly during the recently-completed 1987 legislative session, and is currently awaiting the Governor's signature. Sections 4 and 5 of the Act propose to replace § 51-12-5 with a new code section, § 51-12-5.1, for causes of action arising on or after July 1, 1987. Sec. 51-12-5.1, if it becomes law, will make significant changes in the Georgia law of punitive damages.

*other* potential wrongdoers from similar future conduct. *Ratteree v. Chapman*, 79 Ga. 574 (4) (4 SE 684) (1887).

3. In the instant case, the federal district court instructed the jury as follows: "In addition to actual damages such as I have tried to explain to you, the law permits the jury, under certain circumstances, to award an injured [party] punitive or exemplary damages, in order *to punish the wrongdoer* for some extraordinary misconduct, and *to serve as an example or warning to others* not to engage in such conduct." (Emphasis supplied.) Neither of the purposes stated in this charge are included in OCGA § 51-12-5, and the sole relevant purpose of exemplary damages was omitted. Thus, the charge was not an instruction on § 51-12-5.

4. We find that, inasmuch as the punitive damages in question were not awarded under § 51-12-5, it would serve no useful purpose for this court to determine whether the evidence concerning the conduct of the defendant in this case was sufficient to justify an award of exemplary damages pursuant to § 51-12-5. Thus, we decline to answer the second certified question of the Eleventh Circuit.

*Certified Questions declined. All the Justices concur, except Hunt, J., who concurs specially as to the second question, and Smith, J., who dissents. Gregory J., disqualified.*

HUNT, Justice, concurring specially.

I write separately to express my disagreement with the reasons stated in Divisions 2, 3 and 4, for declining to answer the second certified question. The majority declines to answer on the grounds that the trial court's erroneous charge (to which neither party objected) resulted in an award of punitive damages based on something other than Georgia law. Neither that conclusion nor the use of it as a reason not to answer the question seems logical to me.

There are, however, two reasons upon which to decline and which bear directly on the certified question itself. First, the question basically asks us to decide whether the facts of this case create a jury issue as to punitive damages — that is, a determination of the sufficiency of the evidence. I do not believe this type of question is contemplated under our Rule 37, dealing with certified questions. Secondly, the federal standard of appellate review as to the sufficiency of the evidence differs somewhat from that adopted by our state courts,[1] and the Eleventh Circuit follows the majority view that the federal test would apply under the facts of this diversity case. *Brown-Marx*

---

[1] Unlike our "any evidence" rule, the federal standard is whether, on a review of the evidence, reasonable men, exercising impartial judgment, may differ in their conclusion. If so, the verdict would stand. *John Hancock Mut. Life Ins. Co. v. Dutton*, 585 F2d 1289, 1292 (5th Cir. 1979). See also Wright & Miller, Federal Practice and Procedure: Civil § 2524.

*Assoc., Ltd. v. Emigrant Savings Bank,* 703 F2d 1361, 1367, fn. 5 (11th Cir. 1983).

Consequently, I would respectfully decline to answer the second question.

SMITH, Justice, dissenting.

I respectfully dissent as to Division 2 and the judgment. Certainly, the plaintiff in this case is entitled to present the question of compensatory damages before a jury. The purpose of exemplary damages in Georgia, however, as the majority notes, is to deter the defendant from future wrongdoing. Under the facts of this case, the defendant should not be hit with exemplary damages no matter what the jury charge said. The second certified question should be answered in the negative.

The defendant stopped production of asbestos, as have the other manufacturers of asbestos. For the majority of the time that the defendant manufactured asbestos, no one was aware of the dangers inherent in exposure to asbestos. The imposition of punitive damages in this case could only serve to deter the defendant from future wrongdoing by destroying the defendant financially.

While a stinging blow might serve well to beat caution into a reckless party, this case could set off a chain of events that would amount to the stoning to death of the defendant. We do not impose the death penalty upon individuals in tort cases in Georgia. Except in instances of the most heinous intentional act, we should not sanction the death penalty in like cases against corporate defendants.

DECIDED MARCH 19, 1987.

*Hoyle, Morris & Kerr, Lawrence T. Hoyle, Jr., Ralph A. Jacobs, William D. Barwick, A. Stephens Clay, Mara McRae,* for appellant.

*Michael J. Bruckman, Ronald L. Motley, Ann Kimmel, Richard H. Middleton, Jr.,* for appellees.

*Judgment affirmed. All the Justices concur, except Bell, J., not participating.*