Julian P. WAMMOCK,
Plaintiff-Appellee,

v.

CELOTEX CORPORATION, et
al., Defendants,

National Gypsum Company,
Defendant-Appellant.

No. 85–8608.

United States Court of Appeals,
Eleventh Circuit.

Sept. 8, 1987.

William D. Barwick, Atlanta, Ga., Lawrence T. Hoyle, Jr., Philadelphia, Pa., Mara McRae, Kilpatrick & Cody, A. Stephens Clay, Atlanta, Ga., for defendant-appellant.

Richard H. Middleton, Savannah, Ga., Ron L. Motley, Ann Kimmel, Michael J. Brickman, Charleston, S.C., for plaintiff-appellee.

Sidney O. Smith, III, C. Ronald Ellington, Professor of Law, University of Ga., Athens, Ga., for amicus curiae.

Before TJOFLAT and ANDERSON, Circuit Judges, and MORGAN, Senior Circuit Judge.

MORGAN, Senior Circuit Judge:

The primary issue in this case concerns the applicability under Georgia law of punitive damages in an asbestos case where there is the possibility of multiple awards of punitive damages against the same company. Appellant/defendant National Gypsum manufactured a joint compound, used to cover seams between sheets of wallboard, that contained asbestos. Appellee/plaintiff Julian P. Wammock, a carpenter, was exposed to asbestos through the use of National Gypsum's joint compound. After Wammock was diagnosed in 1981 as having asbestosis, Wammock sued National Gypsum under negligence and strict liability theories.[1] As his basis for a punitive damages award, Wammock claimed that National Gypsum willfully or with a conscious indifference to the consequences failed to warn of the dangers of its products containing asbestos even though they allegedly knew that such materials were hazardous. The jury rendered a general verdict in favor of Wammock in the amount of $40,000 in compensatory damages and $250,000 in punitive damages. National Gypsum appealed the verdict, claiming that it was based upon erroneous evidentiary rulings and a generally unfair trial atmosphere. Additionally, National Gypsum alleged that the punitive damages award was based upon insufficient evidence. We affirmed the verdict except for the punitive damages award. *See Wammock v. Celotex Corp.*, 793 F.2d 1518 (11th Cir.1986). We certified to the Georgia Supreme Court the following two questions on the punitive damages issue:

(1) Can a plaintiff recover punitive damages under Georgia law in asbestos tort litigation where the defendants may be liable for multiple awards of punitive damages for the same conduct?

1. Wammock originally filed suit against sixteen manufacturers of asbestos-containing products. National Gypsum was the only defendant out of the sixteen named who did not settle with Wammock or otherwise merit pre-trial dismissal. For a detailed discussion of the facts of this case and the proceedings below, see *Wammock v. Celotex Corp.*, 793 F.2d 1518 (11th Cir.1986).

(2) Was the evidence concerning the conduct of defendant sufficient to justify an award of punitive damages under Georgia law?

*Wammock v. Celotex Corp.*, 797 F.2d 939 (11th Cir.1986).

The Georgia Supreme Court declined to answer either certified question. *See National Gypsum Co. v. Wammock*, 256 Ga. 803, 353 S.E.2d 809 (1987). The Georgia Supreme Court regarded the first question as anticipatory because there had only been one punitive damages award against National Gypsum. As to the second question, the Georgia Supreme Court stated that the district court had not correctly instructed the jury on the reasons for awarding punitive damages under Georgia law. Therefore, the Georgia Supreme Court declined to answer the question. Consequently, the case is back before us for resolution of the two questions previously certified. We now answer each question affirmatively and affirm the jury's punitive damages award in favor of Wammock.

## I. MULTIPLE PUNITIVE DAMAGES AWARDS

■ Georgia law governs this diversity case, and we must interpret the law as would a Georgia court. *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Even "[i]n the absence of controlling precedent, we must nonetheless decide ... issue[s] as we believe a [Georgia] court would decide [them] ..." *Green v. Amerada-Hess Corp.*, 612 F.2d 212, 214 (5th Cir.), *cert. denied*, 449 U.S. 952, 101 S.Ct. 356, 66 L.Ed.2d 216 (1980).[2] In the absence of evidence to the contrary, we presume that the Georgia court would adopt the prevailing rule if called upon to do so. *Hensley v. E.R. Carpenter Co.*, 633 F.2d 1106, 1109 (5th Cir.1980).

In our role as a Georgia court, we must first outline the Georgia law on punitive damages.[3] O.C.G.A. § 51-12-5 (1982), the statute applicable to this case,[4] states that "in a tort action in which there are aggravating circumstances, in either the act or the intention, the jury may give additional damages to deter the wrongdoer from repeating the trespass or as compensation for the wounded feelings of the plaintiff."[5] To authorize the imposition of punitive damages, there must be "evidence of willful misconduct, malice, fraud, wantonness or oppression, or that entire want of care which would raise the presumption of a

2. In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as precedent all decisions of the former Fifth Circuit Court of Appeals rendered prior to October 1, 1981.

3. In some cases, the Georgia Court of Appeals has commented that the term "punitive damages" is a misnomer. *See Griffin v. Wittfield*, 143 Ga.App. 485, 487, n. 1, 238 S.E.2d 589 (1977). The damages referred to in O.C.G.A. § 51-12-5 (1982) are additional damages for aggravating circumstances. Other Georgia courts have used the terms punitive damages, exemplary damages and additional damages interchangeably. "Although this section [§ 51-12-5] does not speak of 'punitive damages,' the additional damages allowed are what would commonly be called 'punitive' in that such damages are in addition to compensatory damages and in that the award is based not on the extent of the plaintiff's injury, but on the aggravated nature of the defendant's conduct." *Westview Cemetery v. Blanchard*, 234 Ga. 540, 216 S.E.2d 776 (1975).

The latest amendment to O.C.G.A. § 51-12-5.-1(a) (Supp.1987), states the following:

(a) As used in this Code section, the term "punitive damages" is synonymous with the terms "vindictive damages," "exemplary damages," and other additional damages awarded because of aggravating circumstances in order to penalize, punish, or deter a defendant. For simplicity, we will refer to the damages in this case as punitive damages.

4. Since this suit was filed, the statute on the awarding of punitive damages in tort cases has been amended. The new code section applies only to causes of action for torts arising before July 1, 1987. O.C.G.A. § 51-12-5.1 (Supp.1987). Therefore, the former code section, O.C.G.A. § 51-12-5 (1982), applies to this case.

5. The other statutory rationale, compensation for wounded feelings, is inapplicable to asbestos cases. The "wounded feelings" referred to in the code section "are not the same in nature as ordinary mental pain and suffering resulting from a physical injury. The former expression relates to the self-respect, sensibilities or pride of a person." *Interstate Life and Accident Co. v. Brewer*, 56 Ga.App. 599, 609, 193 S.E. 458, 464 (1937).

conscious indifference to consequences." [6] *General Refractories Co. v. Rogers*, 240 Ga. 228, 230, 297 S.E.2d 234 (1977). *See also Kicklighter v. Nails by Jannee, Inc.*, 616 F.2d 734, 737 (5th Cir.1980); *Gilman Paper Co. v. James*, 235 Ga. 348, 219 S.E.2d 447 (1975); *Southern R. Co. v. O'Bryan*, 119 Ga. 147(1), 45 S.E. 1000 (1903). Punitive damages cannot be awarded for mere negligence. *Molton v. Commercial Credit Corp.*, 127 Ga.App. 390, 193 S.E.2d 629 (1972); *Louisville & Nashville Railroad Co. v. Young*, 112 Ga.App. 608, 145 S.E.2d 700 (1965). With these guidelines in mind, the jury must determine when punitive damages should be allowed as well as the amount of such damages. *Walk v. Carter*, 110 Ga.App. 273, 138 S.E.2d 390 (1964). *See also Alliance Transp., Inc. v. Mayer*, 165 Ga.App. 344, 301 S.E.2d 290 (1983). "The amount, as measured by the enlightened conscience of an impartial jury, which would be required to deter future acts, necessarily depends upon the facts of the particular case." *Smith v. Milikin*, 247 Ga. 369, 371–72(3), 276 S.E.2d 35 (1981).

■ National Gypsum contends that the limited deterrent purpose of punitive damages under Georgia law [7] renders them inappropriate in asbestos litigation where there is the possibility of multiple punitive damages awards against the same company.[8] Since National Gypsum no longer produces products containing asbestos, National Gypsum contends that punitive damages as a specific deterrent are no longer

necessary. National Gypsum is incorrectly narrowing the deterrent impact of punitive damages. A jury could also award punitive damages to deter the manufacturer from making "conscious decisions to defer implementation of safety devices in order to protect its profits." *Ford Motor Co. v. Stubblefield*, 171 Ga.App. 331, 241, 319 S.E.2d 470 (1984). Punitive damages act as a specific deterrent in both specific and general ways. In this case, Georgia allows punitive damages "to deter the wrongdoer from repeating the trespass." Here the trespass is both failing to warn customers of the dangers of asbestos and failing generally to initiate proper safety procedures. "Courts and commentators have noted that punitive damages serve as a critical deterrent in the area of consumer safety by encouraging manufacturers to take affirmative steps in product safety. Punitive damages serve to deter manufacturers from accepting the risks of paying compensatory damages rather than changing the business practice which would result in extra cost." *Neal v. Carey Canadian Mines, Ltd.*, 548 F.Supp. 357, 376 (E.D.Pa. 1982), *aff'd sub nom. Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481 (3d Cir.1984) (citing as examples *Wangen v. Ford Motor Co.*, 97 Wis.2d 260, 294 N.W.2d 437, 451–57 (1980); *Sturm, Ruger & Co., Inc. v. Day*, Alaska, 594 P.2d 38, 47 (1979); Owen, Punitive Damages in Products Liability Litigation, 74 Mich.Law Rev. 1257, 1277–99 (1976)).

---

**6.** This test has been codified in O.C.G.A. § 51–12–5.1 (Supp.1987).

**7.** O.C.G.A. § 51–12–5.1 (Supp.1987) now provides that punitive damages shall be awarded not as compensation to a plaintiff but solely to punish, penalize or deter a defendant.

**8.** O.C.G.A. § 51–12–5.1 (Supp.1987) now limits the amount of punitive damages in the following manner:

(e)(1) In a tort case in which the cause of action arises from product liability, there shall be no limitation regarding the amount which may be awarded as punitive damages. Only one award of punitive damages may be recovered in a court in this state from a defendant for any act or omission if the cause

of action arises from product liability, regardless of the number of causes of action which may arise from such an act or omission.

(f) In a tort case in which the cause of action does not arise from product liability, if it is found that the defendant acted, or failed to act, with the specific intent to cause harm, there shall be no limitation regarding the amount which may be awarded as punitive damages.

(g) For any tort action not provided for by subsection (e) or (f) of this Code section in which the trier of fact has determined that punitive damages are to be awarded, the amount which may be awarded in the case shall be limited to a maximum of $250,000.00. This code section applies only to causes of action arising on or after July 1, 1987. O.C.G.A. § 51–12–5.1(h).

Additionally, National Gypsum maintains that punitive damages are inappropriate in asbestos cases because each punitive damages award imposed on a manufacturer constitutes a separate punishment for the same conduct. *Ford Motor Co. v. Stubblefield*, 171 Ga.App. 331, 319 S.E.2d 470 (1984) provides some guidance in this area. In *Stubblefield*, the Georgia Court of Appeals affirmed an eight million dollar punitive damages award against Ford Motor Company for marketing the mass-produced Mustang II with a known defect. Obviously, the defect in Ford's Mustang could affect more than one person. Nevertheless, the Georgia Court of Appeals allowed the punitive damages award even though there was the possibility that Ford Motor Company might have to face multiple punitive damages awards as a result of the same defect. Similarly, National Gypsum's joint compound containing asbestos could impair the health of more than one person. Multiple awards in this products liability situation should also be allowed. The *Neal* court summed up its position on multiple awards of punitive damages in the following manner:

[S]ince a product seller owes a separate duty to each individual who is a consumer or user of such a product to refrain from "outrageous conduct" and, if the defendant exhibits "outrageous conduct" to a particular individual through deficiencies in that product which causes injury to that plaintiff, then its course of conduct cannot be characterized as "the same act" because it is separate and distinct with respect to each individual plaintiff. The conduct of the tortfeasor must be viewed with respect to each individual. *Neal*, 548 F.Supp. at 377–78.

Thus, a punitive damages award may be authorized against a manufacturer for each individual plaintiff who contracts asbestos from exposure to the manufacturer's products.

## II. SUFFICIENCY OF THE EVIDENCE TO AWARD PUNITIVE DAMAGES

The second question is whether there was sufficient evidence to support an award of punitive damages in this case. The district court instructed the jury in the following manner on the reasons to award punitive damages:

In addition to actual damages such as I have tried to explain to you, the law permits the jury, under certain circumstances, to award an injured [party] punitive or exemplary damages, in order to punish the wrongdoer for some extraordinary misconduct, and to serve as an example or warning to others not to engage in such conduct.

This instruction is an incorrect statement of Georgia law. As applicable to this case, punitive damages can only be awarded to deter the trespasser from repeating the trespass.

In the court below, National Gypsum failed to object to the jury instruction. On appeal, National Gypsum did not discuss the problem. Only after the Georgia Supreme Court refused to answer the certified question because of the inaccuracy of the jury instruction did National Gypsum ask this court to vacate the punitive damages award and remand with instructions for a new trial. We do not find the jury instruction was plain error, and we refuse to reverse and remand on this issue. *See Andres v. Roswell-Windsor Village Apartments*, 777 F.2d 670 (11th Cir.1985) (Eleventh Circuit refused to reverse on alleged error in jury charge not objected to at trial).

*City of Massachusetts v. Kibbe*, 480 U.S. ——, 107 S.Ct. 1114, 94 L.Ed.2d 293 (1987), discusses this issue. In *Kibbe*, the Supreme Court dismissed the writ of certiorari as improvidently granted because the city had failed to preserve for review the negligence issue. The attorney had not objected to the gross negligence instruction, had proposed an instruction to the same effect, and had not raised the question before the United States Court of Appeals for the First Circuit. *See* Rule 51 of the Federal Rules of Civil Procedure ("[n]o party may assign as error the giving ... [of] an instruction unless he objects thereto before the jury retires to consider the ver-

dict."). We also refuse to reverse an incorrect jury instruction on punitive damages never objected to at trial or challenged on appeal.

■ Accordingly, we address the issue National Gypsum did raise: whether there was sufficient evidence to support an award of punitive damages under Georgia law? For the jury properly to award punitive damages, Wammock had to present evidence of National Gypsum's willful misconduct, malice, fraud, wantonness or oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences.[9]

At trial, Wammock presented evidence that National Gypsum was aware of hazards of asbestos exposure in other contexts, such as the hazards faced by miners, plant workers and others who were exposed to higher concentrations of asbestos fiber than were workers in Wammock's position. National Gypsum contends that there is no evidence that National Gypsum extrapolated from known risks of high level exposure and drew any conclusion whatsoever about risks of lower level exposures to users of joint compound.

Wammock also presented the testimony of Dr. Gerritt Schepers, the former director of the Saranac Laboratory and Albert Fay, a former National Gypsum officer. Dr. Schepers testified that he wrote a letter to National Gypsum before 1964, criticizing the company for continuing to sell asbestos wallboard without warnings. Albert Fay testified that National Gypsum had failed to label its products until ordered to do so in 1972 by the government. After 1972, National Gypsum did not immediately label its products because customer demand for its products was too great to permit the delay that would result from labeling. We do not find it implausible for the jury to consider National Gypsum's actions as demonstrating an entire want of care which would raise the presumption of a conscious indifference to consequences. Accordingly, there is sufficient evidence to support the punitive damages award.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the jury's award of punitive damages.

9. The district court instructed the jury in the following manner as to the evidence Wammock had to present in order to receive punitive damages:

If you should find from a preponderance of the evidence in the case that the plaintiff is entitled to a verdict for actual damages such as pain and suffering, lost wages, or medical expenses, and should you further find that the acts or omissions of defendants which proximately caused actual injury or damage to the plaintiff were maliciously or wantonly or oppressively done, then you may add to the award of actual damages such amount as you shall unanimously agree to be proper as punitive and exemplary damages.

An act or a failure to act is maliciously done if done in reckless or callous disregard of, or indifference to the rights of one or more persons, including the injured person.

An act or a failure to act is wantonly done if done in reckless or callous disregard of, or indifference to, the rights of one or more persons, including the injured person.

An act or a failure to act is oppressively done if done in a way or manner which injures or damages, or otherwise violates the right of another person with unnecessary harshness or severity, or by misuse or abuse of authority or power, or by taking advantage of some weakness, or disability, or misfortune of another person.

Mere negligence can never amount to such aggravating circumstances as to warrant the imposition of exemplary or punitive damages, unless such negligence is so gross as to evince a complete disregard of the rights of others.

Although the district court had incorrectly stated the reasons for punitive damages, the court had correctly charged the jury as to what they would have to find in order to award punitive damages.