Julian P. WAMMOCK, Plaintiff-Appellee,

v.

CELOTEX CORPORATION, et al., Defendants,

National Gypsum Company, Defendant-Appellant.

No. 85-8608.

United States Court of Appeals, Eleventh Circuit.

Jan. 15, 1988.

---

[*] Honorable John W. Peck, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

[**] *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

William D. Barwick, Atlanta, Ga., Lawrence T. Hoyle, Jr., Hoyle, Morris & Kerr, Philadelphia, Pa., Mara McRae, Kilpatrick & Cody, A. Stephens Clay, Atlanta, Ga., for defendant-appellant.

Richard H. Middleton, Savannah, Ga., Ron L. Motley, Ann Kimmel, Michael J. Brickman, Charleston, S.C., for plaintiff-appellee.

Gary B. Blasingame, Henry G. Garrard, III, Sidney O. Smith, III, C. Ronald Ellington, Professor of Law, Athens, Ga., for amicus curiae.

Before TJOFLAT and ANDERSON [*], Circuit Judges, and MORGAN, Senior Circuit Judge.

MORGAN, Senior Circuit Judge:

The panel opinion dated September 8, 1987, is hereby withdrawn and this opinion is substituted in lieu thereof.

The primary issue in this case concerns the applicability under Georgia law of punitive damages in asbestos cases. Appellant/defendant National Gypsum manufactured a joint compound, used to cover seams between sheets of wallboard, that contained asbestos. Appellee/plaintiff Julian P. Wammock, a carpenter, was exposed to asbestos through the use of National Gypsum's joint compound. After Wammock was diagnosed in 1981 as having asbestosis, Wammock sued National Gypsum under negligence and strict liability theories.[1] As his basis for a punitive damage

---

[*] Judge Anderson recused himself after oral argument in this case. This opinion is rendered by a quorum. 28 U.S.C. § 46(d).

1. Wammock originally filed suit against sixteen manufacturers of asbestos-containing products.

National Gypsum was the only defendant out of the sixteen named who did not settle with Wammock or otherwise merit pre-trial dismissal. For a detailed discussion of the facts of this case

award, Wammock claimed that National Gypsum willfully or with a conscious indifference to the consequences failed to warn of the dangers of its products containing asbestos even though they allegedly knew that such materials were hazardous. The jury rendered a general verdict in favor of Wammock in the amount of $40,000 in compensatory damages and $250,000 in punitive damages. National Gypsum appealed the verdict, claiming that it was based upon erroneous evidentiary rulings and a generally unfair trial atmosphere. Additionally, National Gypsum alleged that the punitive damages award was based upon insufficient evidence. We affirmed the verdict except for the punitive damages award. *See Wammock v. Celotex Corp.,* 793 F.2d 1518 (11th Cir.1986). We certified to the Georgia Supreme Court the following two questions on the punitive damages issue:

(1) Can a plaintiff recover punitive damages under Georgia law in asbestos tort litigation where the defendants may be liable for multiple awards of punitive damages for the same conduct?

(2) Was the evidence concerning the conduct of defendant sufficient to justify an award of punitive damages under Georgia law?

The Georgia Supreme Court declined to answer either certified question. *See National Gypsum Co. v. Wammock,* 256 Ga. 803, 353 S.E.2d 809 (1987). The Georgia Supreme Court regarded the first question as anticipatory because there had only been one punitive damages award against National Gypsum. As to the second question, the Georgia Supreme Court stated that the district court had not correctly instructed the jury on the reasons for awarding punitive damages under Georgia law. Therefore, the Georgia Supreme Court declined to answer the question. Consequently, the case is back before us for resolution. We affirm the jury's verdict in favor of Wammock in the amount of $40,000 compensatory damages and $250,000 punitive damages.

Georgia law governs this diversity case, and we must interpret the law as would a Georgia court. *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed.2d 1188 (1938). Even "[i]n the absence of controlling precedent, we must nonetheless decide ... issue[s] as we believe a [Georgia] court would decide [them] ..." *Green v. Amerada–Hess Corp.,* 612 F.2d 212, 214 (5th Cir.), *cert. denied,* 449 U.S. 952, 101 S.Ct. 356, 66 L.Ed.2d 216 (1980).[2] In the absence of evidence to the contrary, we presume that the Georgia court would adopt the prevailing rule if called upon to do so. *Hensley v. E.R. Carpenter Co.,* 633 F.2d 1106, 1109 (5th Cir.1980).

In our role as a Georgia court, we must first outline the Georgia law on punitive damages.[3] O.C.G.A. Sec. 51–12–5 (1982), the statute applicable to this case,[4] states

---

and the proceedings below, see *Wammock v. Celotex Corp.,* 793 F.2d 1518 (11th Cir.1986).

2. In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as precedent all decisions of the former Fifth Circuit Court of Appeals rendered prior to October 1, 1981.

3. In some cases, the Georgia Court of Appeals has commented that the term "punitive damages" is a misnomer. *See Griffin v. Wittfield,* 143 Ga.App. 485, 487, n. 1, 238 S.E.2d 589 (1977). The damages referred to in O.C.G.A. Sec. 51–12–5 (1982) are additional damages for aggravating circumstances. Other Georgia courts have used the terms punitive damages, exemplary damages and additional damages interchangeably. "Although this section [Sec. 51–12–5] does not speak of 'punitive damages,' the additional damages allowed are what would commonly be called 'punitive' in that such dam-

ages are in addition to compensatory damages and in that the award is based not on the extent of the plaintiff's injury, but on the aggravated nature of the defendant's conduct."
*Westview Cemetery v. Blanchard,* 234 Ga. 540, 216 S.E.2d 776 (1975).

The latest amendment to O.C.G.A. Sec. 51–12–5.1(a) (Supp.1987), states the following:

(a) As used in this Code section, the term "punitive damages" is synonymous with the terms "vindictive damages," "exemplary damages," and other additional damages awarded because of aggravating circumstances in order to penalize, punish, or deter a defendant. For simplicity, we will refer to the damages in this case as punitive damages.

4. Since this suit was filed, the statute on the awarding of punitive damages in tort cases has been amended. The new code section applies only to causes of action for torts arising on or

that "in a tort action in which there are aggravating circumstances, in either the act or the intention, the jury may give additional damages to deter the wrongdoer from repeating the trespass or as compensation for the wounded feelings of the plaintiff." [5] To authorize the imposition of punitive damages, there must be "evidence of willful misconduct, malice, fraud, wantonness or oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences." [6] *General Refractories Co. v. Rogers,* 240 Ga. 228, 230, 239 S.E.2d 795, 798 (1977). *See also Kicklighter v. Nails by Jannee, Inc.,* 616 F.2d 734, 737 (5th Cir.1980); *Gilman Paper Co. v. James,* 235 Ga. 348, 219 S.E.2d 447 (1975); *Southern R. Co. v. O'Bryan,* 119 Ga. 147(1), 45 S.E. 1000 (1903). Punitive damages cannot be awarded for mere negligence. *Molton v. Commercial Credit Corp.,* 127 Ga.App. 390, 193 S.E.2d 629 (1972); *Louisville & Nashville Railroad Co. v. Young,* 112 Ga. App. 608, 145 S.E.2d 700 (1965). With these guidelines in mind, the jury must determine when punitive damages should be allowed as well as the amount of such damages. *Walk v. Carter,* 110 Ga.App. 273, 138 S.E.2d 390 (1964). *See also Alliance Transp., Inc. v. Mayer,* 165 Ga.App. 344, 301 S.E.2d 290 (1983).

National Gypsum contends that the limited deterrent purpose of punitive damages under Georgia law [7] renders punitive damages inappropriate in asbestos litigation where there is the possibility of multiple punitive damages awards against the same company.[8] However, we do not have to decide the issue of multiple punitive awards in this case as it does not appear from the record that this appellant, National Gypsum, has been assessed multiple punitive awards in any other of the asbestos cases filed.

Another question is whether there was sufficient evidence to support an award of punitive damages in this case. The district court instructed the jury in the following manner on the reasons to award punitive damages:

> In addition to actual damages such as I have tried to explain to you, the law permits the jury, under certain circumstances, to award an injured [party] punitive or exemplary damages, in order to punish the wrongdoer for some extraordinary misconduct, and to serve as an example or warning to others not to engage in such conduct.

This instruction is an incorrect statement of Georgia law.

after July 1, 1987. O.C.G.A. Sec. 51–12–5 (Supp. 1987). Therefore, the former code section, O.C. G.A. Sec. 51–12–5 (1982), applies to this case.

**5.** The other statutory rationale, compensation for wounded feelings, is inapplicable to asbestos cases. The "wounded feelings" referred to in the code section "are not the same in nature as ordinary mental pain and suffering resulting from a physical injury. The former expression relates to the self-respect, sensibilities or pride of a person." *Interstate Life and Accident Co. v. Brewer,* 56 Ga.App. 599, 609, 193 S.E. 458, 464 (1937).

**6.** This test has been codified in O.C.G.A. Sec. 51–12–5.1(b) (Supp.1987).

**7.** O.C.G.A. Sec. 51–12–5.1 (Supp.1987) now provides that punitive damages shall be awarded not as compensation to a plaintiff but solely to punish, penalize or deter a defendant.

**8.** O.C.G.A. Sec. 51–12–5.1 (Supp.1987) now limits the amount of punitive damages in the following manner:

(e)(1) In a tort case in which the cause of action arises from product liability, there shall be no limitation regarding the amount which may be awarded as punitive damages. Only one award of punitive damages may be recovered in a court in this state from a defendant for any act or omission if the cause of action arises from product liability, regardless of the number of causes of action which may arise from such an act or omission.

(f) In a tort case in which the cause of action does not arise from product liability, if it is found that the defendant acted, or failed to act, with the specific intent to cause harm, there shall be no limitation regarding the amount which may be awarded as punitive damages.

(g) For any tort action not provided for by subsection (e) or (f) of this Code section in which the trier of fact has determined that punitive damages are to be awarded, the amount which may be awarded in the case shall be limited to a maximum of $250,000.00. This code section applies only to causes of action arising on or after July 1, 1987. O.C.G.A. Sec. 51–12–5.1(h).

In the court below, National Gypsum failed to object to the jury instruction. On appeal, National Gypsum did not discuss the problem. Only after the Georgia Supreme Court refused to answer the certified question because of the inaccuracy of the jury instruction did National Gypsum ask this court to vacate the punitive damages award and remand with instructions for a new trial. We do not find the jury instruction was plain error, and we refuse to reverse and remand on this issue. *See Andres v. Roswell–Windsor Village Apartments,* 777 F.2d 670 (11th Cir.1985) (Eleventh Circuit refused to reverse on alleged error in jury charge not objected to at trial).

*City of Massachusetts v. Kibbe,* 480 U.S. ——, 107 S.Ct. 1114, 94 L.Ed.2d 293 (1987), discusses this issue. In *Kibbe,* the Supreme Court dismissed the writ of certiorari as improvidently granted because the city had failed to preserve for review the negligence issue. The attorney had not objected to the gross negligence instruction, had proposed an instruction to the same effect, and had not raised the question before the United States Court of Appeals for the First Circuit. *See* Rule 51 of the Federal Rules of Civil Procedure ("[n]o party may assign as error the giving ... [of] an instruction unless he objects thereto before the jury retires to consider the verdict."). We also refuse to reverse an incorrect jury instruction on punitive damages never objected to at trial or challenged on appeal.

Accordingly, we address the issue National Gypsum did raise: whether there was sufficient evidence to support an award of punitive damages under Georgia law? For the jury properly to award punitive damages, Wammock had to present evidence of National Gypsum's willful misconduct, malice, fraud, wantonness or oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences.[9]

At trial, Wammock presented evidence that National Gypsum was aware of hazards of asbestos exposure in other contexts, such as the hazards faced by miners, plant workers and others who were exposed to higher concentrations of asbestos fiber than were workers in Wammock's position. National Gypsum contends that there is no evidence that National Gypsum extrapolated from known risks of high level exposure and drew any conclusion whatsoever about risks of lower level exposures to users of joint compound.

Wammock also presented the testimony of Dr. Gerritt Schepers, the former director of the Saranac Laboratory and Albert Fay, a former National Gypsum officer. Dr. Schepers testified that he wrote a letter to National Gypsum before 1964, criticizing the company for continuing to sell asbestos

---

**9.** The district court instructed the jury in the following manner as to the evidence Wammock had to present in order to receive punitive damages:

If you should find from a preponderance of the evidence in the case that the plaintiff is entitled to a verdict for actual damages such as pain and suffering, lost wages, or medical expenses, and should you further find that the acts or omissions of defendants which proximately caused actual injury or damage to the plaintiff were maliciously or wantonly or oppressively done, then you may add to the award of actual damages such amount as you shall unanimously agree to be proper as punitive and exemplary damages.

An act or a failure to act is maliciously done if done in reckless or callous disregard of, or indifference to the rights of one or more persons, including the injured person.

An act or a failure to act is wantonly done if done in reckless or callous disregard of, or indifference to, the rights of one or more persons, including the injured person.

An act or a failure to act is oppressively done if done in a way or manner which injures or damages, or otherwise violates the right of another person with unnecessary harshness or severity, or by misuse or abuse of authority or power, or by taking advantage of some weakness, or disability, or misfortune of another person.

Mere negligence can never amount to such aggravating circumstances as to warrant the imposition of exemplary or punitive damages, unless such negligence is so gross as to evince a complete disregard of the rights of others.

Although the district court had incorrectly stated the reasons for punitive damages, the court had correctly charged the jury as to what they would have to find in order to award punitive damages.

wallboard without warnings. Albert Fay testified that National Gypsum had failed to label its products until ordered to do so in 1972 by the government. After 1972, National Gypsum did not immediately label its products because customer demand for its products was too great to permit the delay that would result from labeling. We do not find it implausible for the jury to consider National Gypsum's actions as demonstrating an entire want of care which would raise the presumption of a conscious indifference to consequences. Accordingly, there is sufficient evidence to support the punitive damages award.

AFFIRMED.