S90G0941. WMH, INC. et al. v. THOMAS et al.
(398 SE2d 196)

SMITH, Presiding Justice.

For a number of years, appellee Bobby Thomas purchased insurance on behalf of his companies from the appellant insurance agency, WMH, Inc. (WMH) In the summer of 1985 Mr. Thomas decided to solicit competitive bids for the three types of insurance policies he needed. WMH placed the lowest bid and Mr. Thomas instructed the WMH agent to write the three policies. Subsequently, the agent informed Mr. Thomas that he could not write the policies at these prices, but quoted higher premiums. Because these quotes were still lower than the other bids, Mr. Thomas accepted them and instructed the agent to write the policies. One day before Mr. Thomas' coverage was to lapse the agent informed Mr. Thomas that he could not provide coverage at the quoted rates. The quotes from the other agencies had by now expired, and Mr. Thomas' wife told the agent she expected him to provide coverage.

On December 19, 1985 the agent brought three policies to Mr. Thomas: Lloyd's of London; Lumbermens; and Integral. The record shows that, some weeks before, WMH had accepted coverage on behalf of Mr. Thomas on all three policies and had paid each premium. However, Mr. Thomas was not aware of the amount of the premiums which was much higher than either of the two earlier quotes. Mr. Thomas accepted the Integral and Lumbermens policies, but declined the Lloyd's policy which provided insurance for property damage to his long-haul trucks. Mr. Thomas reasoned that since he owned these trucks, he could bear the risk on them. In accordance with the agent's instructions, Mr. Thomas wrote a letter cancelling the Lloyd's policy. Several days later the agent informed Mr. Thomas' wife that there would be a 25 percent penalty for cancelling the Lloyd's policy. There

is a dispute as to whether the agent informed Mr. Thomas of this penalty before Mr. Thomas cancelled the policy. Bobby Thomas testified that he repeatedly called appellant Mr. Huffman to inquire about the penalty, but that Mr. Huffman would not take his phone calls.

Mr. Thomas paid the Integral and Lumbermens premiums in full, but subsequently decided to substitute another agency on the Integral policy. On January 20, 1986 Lumbermens sent a bill to WMH, indicating that an audit showed Mr. Thomas owed an additional $6,212 premium.

The record demonstrates that on February 2, 1986, prior to billing Mr. Thomas for this additional premium, appellant Huffman informed Lumbermens that he could not collect the premium, and asked that Mr. Thomas' policy be cancelled. The following day WMH sent a bill for the additional premium to Mr. Thomas. Lumbermens cancelled the policy by notice dated February 7, 1986. Mr. Huffman likewise caused the Integral policy to be cancelled, maintaining that Mr. Thomas owed WMH money in the form of the Lloyd's penalty which had not been paid. WMH then deducted the amount of the Lloyd's penalty from the unearned premium refunds from Lumbermens and Integral.

Mr. Thomas was able to obtain replacement insurance coverage, but at an additional cost. He then brought suit against WMH and Mr. Huffman, individually, for tortious interference with contract, slander and conversion. The jury returned a verdict in Mr. Thomas' favor, including punitive damages. The Court of Appeals affirmed. *WMH, Inc. v. Thomas*, 195 Ga. App. 61 (392 SE2d 539) (1990). We granted certiorari to consider the opinion of the Court of Appeals.

1. The jury found in favor of the appellees on the tortious interference of contract claims. As to the Lumbermens contract, the jury returned a verdict in favor of Thomas Supply for general damages in the amount of $1,500. This amount represents what it cost Mr. Thomas to replace the Lumbermens policy, plus interest. The jury also awarded $25,000 in punitive damages against WMH, and $50,000 in punitive damages against Mr. Huffman individually. The jury awarded $1,700 in general damages against the appellants for tortious interference with the Integral contract. The jury awarded $25,000 against WMH, Inc., and $25,000 against Mr. Huffman individually in punitive damages. The cause of action in this case arose prior to July 1, 1987, and is therefore governed by OCGA § 51-12-5.

This court has repeatedly held that, despite the misnomer "punitive" damages, the purpose of OCGA § 51-12-5 is to deter the defendant from similar conduct in the future, rather than to punish him. *National Gypsum Co. v. Wammock*, 256 Ga. 803 (2) (353 SE2d 809) (1987). "Under this section the jury is not authorized to assess damages as a punishment for the wrong done." *Johnson v. Morris*, 158

Ga. 403, 405 (123 SE 707) (1924).[1]

In a punitive damage case, the trier of fact must determine: First, was a personal injury or death involved or mere damage to property; and second, was the negligence active or passive. The next step in the determination as to whether punitive damages should be awarded is to decide if there was any evidence of "wilful misconduct, malice, fraud, wantonness, or oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences." *Colonial Pipeline Co. v. Brown*, 258 Ga. 115, 118 (365 SE2d 827) (1988).

In this case there was no damage to person or property. The only actual damage suffered was an increase in insurance premiums for the replacement policies and the jury reimbursed appellees for this increase with interest. There is no negligence present, as each party was aware of what was going on. There was no bodily or property injury and no rational relationship between the alleged offense and the punishment in that the punitive damage award was almost 40 times the actual damage award of $3,200. Appellees suffered no loss as their increase in premiums have been awarded them by the jury. It is undisputed that the appellees were fully insured at all times.

We can only conclude that the jury intended to punish rather than deter the defendants. As this is not a permissible purpose under OCGA § 51-12-5, the award of punitive damages must be set aside.

2. The jury returned a verdict in favor of Bobby Thomas on the slander claim against the appellants. The jury found against Mr. Huffman and WMH jointly, and awarded Mr. Thomas $1,500 general damages. The jury assessed $1 punitive damages against WMH, and $49,999 punitive damages against Mr. Huffman. The jury also returned a verdict of $1,500 general damages in favor of Thomas Supply Company, Inc. and T. P. Lumber Sales against Mr. Huffman and WMH jointly. The jury awarded $40,000 exemplary damages against WMH and $10,000 against Mr. Huffman.

> " 'A corporation will not be liable for any slander uttered by an officer, even though he be acting honestly for the benefit of the company and within the scope of his duties, unless it can be proved that the corporation expressly ordered and directed that officer to say those very words. . . .' [Cits.]" *Church of God, Inc. v. Shaw*, 194 Ga. App. 694 (391 SE2d 666) (1990).

The record does not support a finding that WMH directed Mr. Huffman to make any of the slanderous statements in question.

---

[1] However, compare OCGA § 51-12-5.1 which applies to causes of action arising after July 1, 1987.

Therefore, the awards of punitive damages against WMH cannot stand.

Further, our examination of the record leads us to conclude that the punitive damages awarded against Mr. Huffman in favor of Mr. Thomas for $49,999 as contrasted to $1 against WMH were to punish rather than to deter Mr. Huffman, and therefore are not authorized by OCGA § 51-12-5. See Division 1, supra. This award must also be reversed. However, the $10,000 punitive damages in favor of Thomas Supply Company, Inc. and T. P. Lumber Sales gainst Mr. Huffman, are not subject to the ruling set out in Division 1, supra, and are allowed to stand.

3. The jury returned a verdict of $7,000 general damages and $54,180.60 exemplary damages against WMH on appellees' conversion claim. This award as to punitive damages must be reversed.

Bobby Thomas, or his agent, instructed the agent of WMH to accept the Lloyd's, Lumbermens, and Integral insurance policies. WMH did this by paying the premiums on all three policies. The Lloyd's policy had been in effect for several weeks and was paid in full when Bobby Thomas cancelled it. Mr. Thomas never paid any money toward the Lloyd's policy. When Mr. Thomas cancelled the Lloyd's policy after he had earlier instructed the WMH agent to accept it, he became obligated to pay the 25 percent cancellation penalty which WMH had already paid on his behalf.

When WMH cancelled the Lloyd's policy, it was entitled to only 75 percent of the premium it had paid for the policy. When WMH caused the Lumbermens and Integral policies to be cancelled, it retained the amount of the 25 percent penalty resulting from cancellation of the Lloyd's policy from the unearned premium refunds for these policies.

We view the foregoing events as a single transaction in which Mr. Thomas became obligated to WMH for the full amount of all premiums and penalties for policies which he authorized WMH to accept. As a matter of law it cannot be said that WMH converted any portion of the unearned premium refunds when it applied them to Mr. Thomas' valid debt. See OCGA § 16-8-4.

As there was no conversion, the awards of punitive damages against WMH must be set aside.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Hunt, J., who dissents.*

HUNT, Justice, dissenting.

I respectfully dissent because I disagree with those portions of the opinion which conclude (I suppose as a matter of law) that the awards of punitive damages were to punish rather than deter. The absence of a discernible relationship between the amount of actual damages and the amount of punitive damages does not necessarily

invalidate the latter. See *Hosp. Auth. of Gwinnett County v. Jones,* 259 Ga. 759, 762 (2), fn. 9 (386 SE2d 120) (1989).

DECIDED DECEMBER 4, 1990 —
RECONSIDERATION DENIED DECEMBER 19, 1990.

*Butler, Wooten, Overby & Cheeley, James E. Butler, Jr.,* for appellees.

*Harmon, Owen, Saunders & Sweeney, H. Andrew Owen, Jr., David C. Will, Thomas L. Murphy, Benny Byrd, Jr.,* amici curiae.