THE AMERICAN MUTUAL INSURANCE COMPANY
OF BOSTON *v.* CARYL E. BITTLE

[No. 616, September Term, 1974.]

*Decided June 2, 1975.*

The cause was argued before ORTH, C. J., and MENCHINE and MOORE, JJ.

*Francis J. Ford* for appellant-cross-appellee.

*James E. Davitt*, with whom was *David J. Humphreys* on the brief, for cross-appellant-appellee.

MENCHINE, J., delivered the opinion of the Court.

On December 25, 1969 John Edward Bittle was killed and Caryl E. Bittle and James Bittle were injured when their automobile was in collision with the vehicle of Felix A. Frazier. It was snowing, with the road surface lightly covered with snow. The motor vehicle of Felix A. Frazier was being operated in a northerly direction on Route 1; the motor vehicle of John Edward Bittle was being operated in a southerly direction on Route 1. Route 1 at the point of collision is a four-lane highway, providing travel in both directions without a median divider. The vehicle of Frazier crossed the centerline of the highway and came into collision with the Bittle vehicle.

Frazier was insured by American Mutual Insurance Company of Boston (American Mutual) against automobile liability to a policy limit of $50,000.00. In October, 1970 American Mutual offered to the Bittles the full amount of its policy coverage.[1] The offer was rejected upon the ground that American Mutual had acted in bad faith by refusing earlier to settle pursuant to an ultimatum issued by counsel for the Bittles, demanding that American Mutual pay the

---

* Note: *Certiorari* denied, Court of Appeals of Maryland, September 8, 1975.

1. In a letter dated October 28, 1970 acknowledging but rejecting the offer, counsel for the Bittles declared: "It is our clients' present intention to follow this case through to a final judgment against Mr. Frazier and to thereafter proceed with an excess lawsuit against American Mutual Insurance Company." No copy of this letter was mailed to Frazier.

full amount of its policy of insurance on or before May 15, 1970, at 5:00 P.M. Suit on behalf of the Bittles had not then been instituted (filed on June 16, 1970.)

In the ensuing trial for the motor tort in the Circuit Court for Charles County, verdicts totaling $207,100.00 had been rendered on February 29, 1972. Subsequent to the entry of judgments, American Mutual paid its policy limits in part payment thereof. Frazier, the insured, at no time had requested or demanded that the insurance company pay the policy limits in his behalf. Indeed, Frazier refused to assign to the Bittles any right personal to him as the insured against American Mutual, even after entry of the judgments against him.[2] When Frazier died on June 27, 1972 from natural causes not related to the accident, counsel for the Bittles sought to have his widow obtain Letters of Administration so that suit for the judgment deficit might be instituted by her against American Mutual. She declined.

Thereafter, Caryl E. Bittle applied for and was granted Letters of Administration of the Estate of Felix A. Frazier, deceased, as a creditor of Felix A. Frazier, deceased. No assets in the estate were shown. There were no liabilities other than the Bittle judgment claims. Caryl E. Bittle, then acting as administratrix of the estate of Felix A. Frazier, instituted the subject action against American Mutual to recover as damages the difference between the amount of the policy limits and the amount of the judgments with interest from the date of their rendition. From a judgment in that action for $180,215.00 against it in the Circuit Court for Prince George's County, American Mutual has appealed.

American Mutual contends "the excess liability of an insurer arises out of the relationship between the insured

---

2. Counsel for the Bittles by letter dated April 24, 1972 addressed to Frazier, the insured, had stated, *inter alia:* "I am sure you are aware that under the law you are responsible for the payment of the judgment in excess of the amount of your insurance policy. However as we have stated in a letter to American Mutual Insurance Company dated March 23, 1970, a copy of which we sent to you, we would agree not to attach your property, including your salary, in order to satisfy this judgment, provided you give to our clients an assignment of any rights you might have to make a claim against your insurance company for failing to settle this case for the amount of your coverage when the company had an opportunity to do so." See, however, Disciplinary Rule DR 7-104 A(2).

and his insurance company * * * as a shield to protect the policy holder against bad faith abuses of insurance companies," and that there was no legally sufficient evidence of such bad faith toward its insured as would require submission of the issue to a jury. We agree and shall reverse.

The ultimatum by counsel for the Bittles to American Mutual, demanding settlement "on or before May 15, 1970 at 5 p.m.," was the end product of a series of letters from counsel dated March 23, 1970; April 20, 1970; and May 7, 1970.

The letter of March 23, 1970 had stated, *inter alia,* that: "the investigating police officer and five eye witnesses to this accident, clearly indicate that Mr. Frazier, your insured, is guilty of gross negligence * * *. There is evidence that your insured had been drinking heavily prior to this accident." [3] The letter added: "Our present fee arrangement with the Bittle family has been modified to provide that our fee will be substantially reduced [4] if the case can be settled within the terms and conditions herein stated" and

---

**3.** The record shows that insured's statement to insurer had denied ingestion of alcohol except for one glass of egg nog "with about 1 tablespoon of scotch in it." Frazier claimed a condition of amnesia respecting the circumstances of the collision. There was no evidence that the insured ever retreated from the positions he declared in that statement. Although the police report of the accident included a notation that insured "had been drinking," no charge of driving under the influence of alcohol was placed against him by the investigating officer. This officer refused to be interviewed by American Mutual's investigator "until after the traffic hearing." The latter event did not occur until June 1, 1970, 16 days after expiration of the date fixed by counsel for the Bittles in the ultimatum.

**4.** Under the terms of a document entitled "Modification of Memorandum of Retainer and Authorization of Attorney Originally Signed January 9, 1970" counsel for the Bittles "does hereby agree to reduce his attorney's fee from a one-third contingent fee to 25 per cent contingent fee for a period of 30 days and an additional period, not to exceed 90 days from the date of this agreement, during which time he will attempt to negotiate a settlement * * *." The document also contained the following: "If the judgment [settlement failing] is in excess of the applicable insurance coverage, it is our present intention not to make any effort to collect such excess portion of this judgment from Mr. Frazier, that is to say, the excess over and above the amount of the applicable insurance coverage but rather to request from him an assignment of any right he may have to proceed against the insurance carrier for failing to exercise good faith and reasonable care in the negotiations of a settlement within the above stated conditions in return for which we would offer him a written stipulation to stay execution upon that portion of the judgment."

demanded "in full settlement of all claims the amount of $247,000 or the amount of the applicable insurance coverage, if less, upon condition that we be supplied with satisfactory written proof as to the extent of * * * insurance coverage and a financial statement under oath from Mr. Frazier showing the * * * insurance * * * to be the only substantial asset of [Frazier] * * * available to satisfy a judgment against him * * *. The foregoing offer to settle is expressly conditioned upon acceptance no later than 4 p.m. on April 20, 1970, * * *."

The letter of April 20, 1970, after referring to requested medical examinations of the surviving Bittles by a doctor of American Mutual's selection, stated, *inter alia,* that: "* * * we feel it reasonable to extend the settlement deadline as referred to and conditioned in our letter of March 23, 1970, up to April 30, 1970, 4 p.m."

The letter of May 7, 1970, after stating that the requested medical examination of Caryl E. Bittle by Dr. Gordon for the insurer would be refused because "We believe * * * such an examination is not necessary * * * for the purpose of evaluating settlement possibilities * * * "; then declared that: " * * we do hereby withdraw the requirement of such a financial statement [5] as a condition to a settlement * * * and extend the time for settlement up to and including May 15, 1970, at 5 p.m. If you do not comply with our settlement request by that date and time, all demands will be withdrawn, all offers for settlement will be refused, * * * we will file a lawsuit forthwith * * *. In the event that a judgment exceeds the applicable insurance * * * we will then proceed on an excess claim against you as outlined in out previous letter of March 23, 1970."

The following facts are undisputed in the record:

1. That it was snowing at the time of the collision and that the roads were lightly covered by snow.

2. That the investigating police officer refused to

---

5. Initially demanded in the letter of March 23, 1970.

be interviewed by the representative of the insurer until a date subsequent to that fixed in the ultimatum of counsel for the Bittles.

3. That Frazier, the insured, represented to the insurer:
   (a) that he had ingested only a very small quantity of alcohol on the date of the accident;
   (b) that he had no conscious recollection of the events immediately preceding and following the collision.
4. That Frazier never requested his insurer to settle the claims against him within the limits of his policy of insurance.
5. That counsel for the Bittles unilaterally had rejected American Mutual's request for a medical examination of Mrs. Bittle.

Under the recited undisputed facts, shown to exist on May 15, 1970, we are compelled to declare as a matter of law that there was no showing of a failure by the insurer of its duty to exercise good faith and due care towards its insured. *Cf. State Farm v. White*, 248 Md. 324, 236 A. 2d 269; *Sweeten, Admr. v. National Mutual Insurance Co.*, 233 Md. 52, 194 A. 2d 817; *Gaskill v. Preferred Risk Mutual Insurance Company*, 251 F. Supp. 66 (D.C. D. Md. 1966).

This insured never had sought to have his insurer settle the claims against him. As was said in *Ammerman v. Farmers Insurance Exchange*, 430 P. 2d 576, 578 (S. Ct. Utah 1967): "The privilege of deciding whether to do so should be up to him and not up to some third party to inject his interest into the matter."

The deadline for settlement fixed by counsel for the Bittles was arbitrary and unreasonable, in that it placed the insurer in a position where it would have been required to accept the conditional settlement offer *before it had an opportunity to interview the investigating police officer.*

The record shows that the services of a firm of court reporters had been engaged to get the testimony of all of the

parties, including the police officer, at the traffic hearing initially scheduled for January 11, 1970. That hearing did not in fact occur until June 1, 1970, subsequent to the ultimatum date. The deposition of Thomas R. Clarke, Claims Manager for American Mutual, introduced in evidence by the appellee, explained: "It was absolutely necessary that we interview the police officer in order that he might tell us anything that he knew about this particular case, and of his complete investigation not only at the scene but also at the hospital, in order that we might establish if there was anything that he knew that could shed some light on exactly what happened." Clarke's testimony also included the following:

"The entire question was whether our insured's amnesia was going to come back [sic] and assist us in determining whether there was any liability in this particular case.

Q. I am not sure that I understand you completely, Mr. Clarke. I say that as of the time Mr. Quinn either recommended or requested the authority to settle for policy limits, there was still a question in your mind of the liability of Mr. Frazier?

A. There is a very serious question in my mind today as to the liability in this case. In my own mind, my belief, knowing this particular insured, talking to him, a very hard working individual, lost his only son in the war, a very fine, uneducated man, the circumstances were too bizarre for me to believe that he was responsible for this accident."

The insured, fully aware of the ultimatum, not only did not demand or request the insurer to settle within the framework of that offer, but steadfastly thereafter declined to participate in any action suggesting that his insurer had acted in bad faith in failing to do so.

We find no evidence legally sufficient to establish that as of May 15, 1970 at 5 P.M., American Mutual had shown "bad

faith" to its insured as measured by the rule of law announced in *State Farm v. White, supra.*

All cases cited by the appellees, dealing generally with the duty of an insurer when confronted by a potential conflict of interest arising following offers of compromise, are distinguishable on their facts. The applicable rule of law as to the duty owed by an insurer under such circumstances is substantially uniform. See: Annotation 40 A.L.R.2d 168-226. See Also: Later Case Service 40 A.L.R.2d 168-226. No breach of that duty is shown here.

We do not reach the question whether the absence of proof of monetary loss to the estate of Frazier would operate to bar recovery by the administratrix of his estate.

## Cross-Appeal

The administratrix entered a cross-appeal upon two grounds, namely:

1. That the trial court erred in its denial of her demand for production of insurer's file as to events occurring subsequent to May 15, 1970 at 5 P.M., and
2. That the trial court erred in rejecting her proffer of expert witnesses upon the question of bad faith or negligence.

## The Insurer's File

Both the plaintiffs' declaration and the proof offered under it fixed May 15, 1970 at 5 P.M. as the deadline for acceptance of the offer of settlement. That deadline specifically was declared to be the date of withdrawal of the conditional offer. The assumption by the plaintiffs of such a position caused all events subsequent to that date to be irrelevant and immaterial to the issue presented in the case.

## Expert Witnesses

Our determination that there was no evidence of bad faith or negligence destroys the validity of the cross-appellant's

contention. The testimony of an expert witness to be admissible, must be based upon evidence legally sufficient to support it. *State Health Department v. Walker*, 238 Md. 512, 520, 209 A. 2d 555, 559-60. Here, there was no such evidence. Moreover, it is well established that when a standard of conduct has been fixed by law, an expert witness will not be permitted to express an opinion as to whether or not the conduct in question measures up to the standard. See: *Franceschina v. Hope*, 267 Md. 632, 642, *et seq.* 298 A. 2d 400, 406.

> *Judgment reversed without a new trial.*
> *Costs to be paid by appellee and cross-appellant.*