A91A0045. SOUTHERN GENERAL INSURANCE COMPANY v. HOLT et al.
(409 SE2d 852)

SOGNIER, Chief Judge.

Bridget Holt was found liable to Geneva Fortson for $82,000 in damages for personal injuries she caused Fortson in an automobile accident. After Holt's insurer, Southern General Insurance Company, paid the $15,000 limit under Holt's policy, Holt obtained a release from the balance of the judgment against her by assigning Fortson her claim against Southern General for compensatory damages arising from its negligent and bad faith failure to settle Fortson's claim against Holt within her policy limits, but retained her claim against Southern General for punitive damages arising from that tort. Holt and Fortson (represented by her trustee in bankruptcy) then brought suit against Southern General seeking compensatory and punitive damages for the alleged bad faith failure to settle. Holt also asserted a claim against Southern General for intentional infliction of emotional distress and sought damages to her peace, happiness, and feelings under OCGA § 51-12-6. A jury awarded $83,000 to Fortson as compensatory damages and $100,000 to Holt as punitive damages on the bad faith failure to settle within policy limits claim, and awarded $25,000 to Holt as compensatory damages on the intentional infliction of emotional distress claim. Southern General appeals.

1. We note initially that the propriety of Holt's assignment to Fortson of the compensatory damages aspect of her claim against Southern General for its bad faith failure to settle was not raised by

any party to this appeal. Accordingly, we intimate no opinion whether that assignment was valid under OCGA § 44-12-24 as involving a right of action which involves "directly or indirectly, a right of property." Id.; see *American Chain &c. Co. v. Brunson*, 157 Ga. App. 833, 835 (278 SE2d 719) (1981).

2. Appellant contends the trial court erred by denying its motions for directed verdict because the facts of the case sub judice do not present an issue for the jury concerning a negligent and bad faith failure to settle. "A directed verdict is authorized when 'there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict. . . .' OCGA § 9-11-50 (a). Further, the evidence must be construed most favorably to the party opposing the motion. [Cit.] ' "The standard of appellate review of the trial court's denial of a motion for directed verdict is the 'any evidence' standard." ' [Cit.]" *Foreman v. Eastern Foods*, 195 Ga. App. 332, 333 (393 SE2d 695) (1990).

The transcript reveals that appellee Holt drove her car through a stop sign on June 19, 1987, striking appellee Fortson's vehicle. Holt's liability for the collision was uncontroverted, and appellant promptly paid Fortson's property damage claim. On July 27, 1987, appellant's claims representative wrote Fortson's attorney, Charles Gower, requesting information concerning Fortson's medical expenses and special damages for evaluation in regard to a settlement of her personal injury claim. By letter dated October 7, 1987, Gower offered to settle the claim for $30,000, informing appellant that Fortson had incurred $1,926 in medical expenses, $5,184 in lost wages, and that a nerve block procedure might be necessary at an expense of approximately $7,500. The October 7, 1987 offer to settle was withdrawn by letter dated October 13, 1987, which also notified appellant that Fortson had been hospitalized and that she might have a ruptured disc. By letter dated October 19, 1987, Gower informed appellant that Fortson was still hospitalized and had been told that she definitely had a ruptured disc. Gower requested appellant reveal its policy limits in order to facilitate settlement. Appellant refused that request in its letter dated October 28, 1987 and requested further medical information to substantiate Fortson's condition.

On November 2, 1987, Gower made an offer to settle Fortson's claim against Holt at the policy limits upon proof of those limits, contingent upon appellant's acceptance of the offer within an arbitrary period of ten days. Gower enclosed the office notes of Fortson's physician and informed appellant that her medical expenses then exceeded $10,000 (enclosing two bills totalling $6,516 and an estimate of $4,000 for the hospital bill) and her lost wages exceeded $5,000. On November 9, 1987, Gower sent another letter, enclosing a copy of the lawsuit

he intended to file on behalf of Fortson, and reiterated his offer of settlement at the policy limits within ten days of the November 2nd letter. Gower wrote again on November 10, 1987, enclosing a copy of Fortson's hospital bill for $4,335.50. By overnight delivery, Gower sent a letter dated November 12, 1987, which extended the offer of settlement at the policy limits through the close of business on November 17, 1987, and enclosed Fortson's complete medical record from her hospitalization, including x-rays related to surgery done to treat the injuries.

It is uncontroverted that appellant did not communicate with Gower during the settlement offer period to accept, reject, counteroffer, or request an extension of time. It is also uncontroverted that appellant did not contact Holt to inform her that Fortson was considering bringing suit against her, that Fortson had given appellant documents indicating her injuries might exceed the policy limits, or that an offer to settle within policy limits had been made by Fortson's attorney.

On November 18, 1987, Gower wrote to appellant noting the passage of the deadline for settlement and the absence of any response by appellant to the offer, and informing appellant that Fortson would no longer settle for the policy limits. Two days later, on November 20th, appellant's representative contacted Gower by telephone and offered to settle at the policy limit. That offer and a repeat offer to settle on the same terms, which was made subsequent to the filing of Fortson's action, were rejected.

"It is no longer open to question in this State that the claim of an insured under an automobile liability policy for damages on account of the bad faith tortious refusal of the insurer to settle a liability claim against [her] within the policy limits resulting in damage to [her] in the form of a judgment in excess of the policy limits being returned against [her] is a legitimate charge against the insurer upon which recovery may be had by the insured. [Cits.]" *Shaw v. Caldwell,* 229 Ga. 87, 91 (189 SE2d 684) (1972). See *McCall v. Allstate Ins. Co.,* 251 Ga. 869 (310 SE2d 513) (1984). In deciding whether to accept an offer to settle a claim within policy limits, the insurer "must accord the interest of its insured the same faithful consideration it gives its own interest . . . ." (Emphasis deleted.) *Great American Ins. Co. v. Exum,* 123 Ga. App. 515, 519 (181 SE2d 704) (1971). "[I]t is for the jury to decide whether the insurer has or has not so acted." Id. See also *National Emblem Ins. Co. v. Pritchard,* 140 Ga. App. 350 (1) (231 SE2d 126) (1976).

The evidence adduced at trial thus showed that Holt's liability for Fortson's injuries arising out of the collision was uncontroverted, as appellant acknowledged by promptly paying Fortson's property damages; that appellant, while conducting no investigation itself, was

kept informed that Fortson had suffered bodily injury as a result of the collision and that her physical condition was deteriorating; and that four and a half months after the collision, Fortson's attorney extended an offer to settle Fortson's claims within the policy limits on November 2nd for a duration ultimately extended to November 17th, an offer which appellant never communicated to Holt. While the time period set by Gower was arbitrarily brief, appellant never contacted Gower to request an extension even for the two days which the evidence demonstrated was all the extra time appellant needed before it could accept the offer.

Notwithstanding the above evidence and persuasive foreign case law indicating that appellant's behavior in failing to inform Holt of the settlement offer (see *State Farm &c. Ins. Co. v. Smoot*, 381 F2d 331, 338 (5th Cir. 1967); *Riske v. Truck Ins. Exchange*, 490 F2d 1079, 1085 (8th Cir. 1974)) and failing to settle when the insured's liability was uncontestable (compare *Hall v. Preferred Acc. Ins. Co.*, 204 F2d 844, 848 (5th Cir. 1953)), demonstrates bad faith or negligence in the refusal to settle a claim within policy limits, appellant argues a verdict in its favor was demanded on the bad faith failure to settle because it breached no duty owed to Holt. Specifically, appellant argues it was not required to take into consideration the arbitrary time limit set by Gower for acceptance of the settlement offer but instead was entitled to evaluate and process that offer according to its established internal operating procedures, which it asserts the evidence showed it followed here with all due haste.

First, looking to an insurer's obligation to consider an arbitrarily time-limited settlement offer, because a person injured by an insurance company's policyholder occupies no contractual or fiduciary relationship with the insurer or the insured, see *Jones v. Southern Homes Ins. Co.*, 135 Ga. App. 385, 389 (2) (217 SE2d 620) (1975), that person can set any time for acceptance of a settlement offer, even an unreasonable and arbitrary time. However, an insurer need not be governed by such time limit. See *Martin v. Hartford Acc. &c. Co.*, 39 Cal. Rptr. 342, 347 (1964). Rather, the issue is whether the insurer acted in good faith or bad faith, and that is to be determined by the circumstances of each case. Id.

In order to act in a manner consistent with its duty to give equal consideration to the interests of the insured, *Exum*, supra; *United States F. & G. Co. v. Evans*, 116 Ga. App. 93, 96-97 (156 SE2d 809), aff'd 223 Ga. 789 (158 SE2d 243) (1967), we hold that an insurer may not fail to give appropriate consideration to a settlement offer which may reduce the financial burden upon the insured merely because the settlement offer is of limited duration. Although there may be situations in which, given the valid business concerns of the ordinary prudent insurer, the time restriction in a settlement offer may be so un-

reasonable under the circumstances of the claim that as a matter of law an insurer could not appropriately consider it, a determination of the reasonableness or unreasonableness of the time in the offer will usually be a question for the trier of fact. See *Bearden Mercantile Co. v. Madison Oil Co.*, 128 Ga. 695, 702 (3) (58 SE 200) (1907); accord *J. L. v. State of Ga.*, 147 Ga. App. 818, 819 (250 SE2d 559) (1978). That determination will necessarily be based on the fact that for an insurer, which must weigh the risks and rewards related to a settlement offer, the impending expiration of a time-limited offer is but one of many elements to be given appropriate consideration. Accordingly, in considering whether an insurer's failure to accept a settlement offer was negligent or in bad faith, the trier of fact must determine whether the time period provided in the offer was sufficient under the circumstances to enable the insurer to complete its evaluation and processing of the offer.

In the case sub judice, the evidence established that the settlement offer was processed under appellant's internal operating procedures whereby all claims were handled in the order of their arrival at appellant's place of business, with no special consideration or priority given to any claim, regardless whether the claim was contested, whether the claim involved an insured or a party injured by an insured, or whether the claim involved a time-limited offer to settle within policy limits. Based on this evidence of its methods of evaluating and processing claims, appellant argues that a verdict in its favor was demanded because it was uncontroverted that under these procedures appellant could not have appropriately considered the settlement offer within the time restraints set by Gower.[1]

We reject appellant's argument that an insurer's conduct must be viewed exclusively within the context of the scale of its operations and the internal procedures it has promulgated in order to conduct its business in the fashion it prefers, regardless of the impact those claims procedures may have upon its insureds' interests. The law imposes upon the insurer the duty to " 'exercise diligence, intelligence, good faith, and honest and conscientious fidelity to the common interest of the insured as well as itself in determining whether to accept or reject an offer of settlement. While the insurer may properly give consideration to its own interest, it must in good faith give at least equal consideration to the interest of the insured, and if it fails to do so, it acts in bad faith. [Cits.]' " *Smoot*, supra at 338. See also *McCall*, supra at 871 (1), and *Evans*, supra at 97. Given that duty, to accept appellant's argument would be to authorize insurers to place greater

---

[1] In order to address this argument, however, we note the necessity of overlooking the fact that appellant never requested an extension of time from Gower.

importance on their own interests in the regulation of internal business operations than they place on the interests of their policyholders. This we decline to do. In carrying out its duty to give appropriate consideration to settlement offers of limited duration, an insurer cannot justify its failure to give equal consideration to its insureds' interests by relying on internal operating procedures promulgated by the insurer when the effect of such procedures is to prevent the insurer from giving the settlement offer that consideration.

"A verdict shall be directed only when the evidence *demands* — as distinguished from merely seeming to preponderate towards — a certain verdict." *Morris v. Futch*, 193 Ga. App. 132, 133 (1) (386 SE2d 905) (1989). The transcript reveals evidence from which the jury could have found that appellant was adequately informed that Fortson's claim was a policy limits case prior to the expiration of the settlement demand and that appellant was provided with sufficient medical records to document that Fortson's bodily injuries exceeded Holt's policy limits. There was evidence that appellant's failure to act timely on the offer was the result of appellant's rigid adherence to internal procedures, and that the effect of those procedures, with their lack of recognition of the relative weights of differing claims, was to elevate appellant's interest in the uniform management of its claims process over Holt's interest in having a claim exposing her to financially ruinous liability settled within her policy limits. This evidence, in addition to the inferences the jury could have drawn from appellant's failure to request an extension of time from Gower, authorized the jury to find that appellant's failure to respond to the settlement offer prior to its November 17, 1987 expiration constituted a breach of the duty it owed its insured. See *Grumbling v. Medallion Ins. Co.*, 392 FSupp. 717 (Ore. 1975); *Andrews v. Central Surety Ins. Co.*, 271 FSupp. 814 (SC 1967).

Although after considering the closely contested facts adduced by the parties, the jury in the case sub judice might have found in favor of the insurer, as did the jury in *DeLaune v. Liberty Mut. Ins. Co.*, 314 S2d 601 (Fla. App. 1975), quoted at length by the dissent, and the trial court in the bench trial in *Clauss v. Fortune Ins. Co.*, 523 S2d 1177 (Fla. App. 1988), applying as we must the "any evidence" rule, we cannot hold as a matter of law that there was " 'not more than a scintilla' " of evidence, *Jiffy Store v. Bishop*, 190 Ga. App. 716, 717 (379 SE2d 602) (1989) to support the jury's verdict here. Therefore, as the transcript contains some evidence in support of appellees' claim and as the evidence with all reasonable deductions did not demand a verdict for the insurer, OCGA § 9-11-50 (a), the trial court did not err by denying appellant's motions for a directed verdict.

Appellant also argues, citing *Adduci v. Vigilant Ins. Co.*, 424 NE2d 645, 649 (Ill. App. 1981), that its acceptance of the expired of-

fer to settle Fortson's claim within Holt's policy limits constituted an absolute defense to any liability since there was absolutely no evidence at trial as to why the settlement offer, which was good on November 17, 1987, was unavailable to the insurer two days later. But see *Martin*, supra at 346 (rejecting insurer's argument that its purported acceptance of an expired offer constitutes an "absolute defense" to a charge of bad faith failure to settle within policy limits). Appellant's argument, relied upon by the dissent, challenges the proposition that appellant's breach of its duty was the proximate cause of Holt's injury (i.e., the verdict in excess of the policy limits), and is based on the assertion that appellant was not liable because it was Fortson's action in rejecting appellant's untimely acceptance of the expired offer to settle that caused Holt's injury, not appellant's action in failing to respond timely to that offer.

We do not agree with this argument that an insurer's so-called "acceptance" of an expired offer which the injured party then rejects serves to absolve the insurer from all damages suffered by the insured as a result of the insurer's earlier bad faith failure to settle. It is well established law in Georgia that " '[t]he causal connection between an original act of negligence and injury to another is not broken by the "intervening" act of a third person, if the nature of such intervening act was such that it could reasonably have been anticipated or foreseen by the original wrong-doer.' [Cit.]" *National Upholstery Co. v. Padgett*, 111 Ga. App. 842, 849 (143 SE2d 494) (1965). See also *Union Carbide v. Holton*, 136 Ga. App. 726, 729 (222 SE2d 105) (1975) (no proximate cause where there has occurred "an independent, intervening act of someone other than the defendant, which was not foreseeable by defendant, *was not triggered by defendant's act*, and which was sufficient of itself to cause the injury. [Cit.]" (Emphasis supplied.))

An injured party's rejection of an insurer's untimely "acceptance" of an expired settlement offer does not break the chain of causation because it is a reasonable and foreseeable effect of the insurer's failure to settle pursuant to the terms set forth in the offer that the untimely or otherwise nonconforming "acceptance" will be refused, either on reasonable grounds, such as the injured party's decision to pursue a greater recovery from the insured or, given the adversarial positions occupied by the parties, on wholly unreasonable grounds. Since the injured party is within his or her rights and breaches no duty owing the insurer or the insured by rejecting a nonconforming "acceptance," it follows that the "intervening act," i.e., the rejection of the late acceptance, would not be sufficient in and of itself to cause the injury to the insured. See *Southern R. Co. v. Webb*, 116 Ga. 152 (42 SE 395) (1902). At best, the insurer's "acceptance" of an expired offer may constitute evidence that the insurer, realizing its error, at-

tempted to minimize the damages it may have caused its insured. Accordingly, this argument presents no meritorious basis for reversing the trial court's denial of appellant's motions for a directed verdict.

3. Appellant contends the trial court erred by denying its motion to dismiss the complaint. "The familiar rule regarding motions to dismiss for failure to state a claim is that they should not be granted unless the complaint shows with certainty that the plaintiff would not be entitled to relief under any state of facts that could be proved in support of the claim. [Cits.]" *Property Pickup v. Morgan*, 249 Ga. 239, 240 (290 SE2d 52) (1982). Applying the above standard to appellees' complaint, the trial court did not err by denying the motion to dismiss. See *Ledford v. Meyer*, 249 Ga. 407, 408-409 (2) (290 SE2d 908) (1982).

4. We find no error in the trial court's refusal to give a requested charge on the effect of appellees' failure to exercise ordinary care to avoid the consequences of appellant's negligence. Appellant's argument in support of this enumeration is addressed solely to Fortson, who appellant maintains was unreasonable as a matter of law in refusing to accept appellant's tardy settlement offer. As discussed in Division 2, supra, we reject any suggestion that Fortson was ever under any duty to compromise her claim against Holt or otherwise shelter Holt from the effect of appellant's negligence. Insofar as Fortson stands in the shoes of Holt as her assignee, but see Division 1, supra, we note that Holt was unable to avoid the negligence of appellant since the settlement offers were not communicated to her.

5. We agree with appellant that the trial court erred by denying its motions for directed verdict as to Holt's claim for compensatory damages for intentional infliction of emotional distress. "The tort of intentional infliction of emotional distress is recognized in this state where the defendant's actions were so terrifying or insulting as naturally to humiliate, embarrass, or frighten the plaintiff. Claims for intentional infliction of emotional distress have been upheld by this court when the threats on which those claims were based were outrageous and egregious." (Citations and punctuation omitted.) *Gordon v. Frost*, 193 Ga. App. 517, 521 (388 SE2d 362) (1989). See *Georgia Farm &c. Ins. Co. v. Mathis*, 197 Ga. App. 324 (398 SE2d 387) (1990). "[I]t is not enough that [the defendant's] conduct in a given situation is intentional or that it is wilful and wanton. In order to warrant recovery . . . the conduct also must be of such serious import as to *naturally* give rise to such intense feelings of humiliation, embarrassment, fright or extreme outrage as to cause severe emotional distress. Otherwise, the conduct will not rise to the requisite level of outrageousness and egregiousness. [Cits.]" *Moses v. Prudential Ins. Co. of America*, 187 Ga. App. 222, 225 (369 SE2d 541) (1988).

Viewing the evidence in the light most favorable to Holt, see

*Gordon,* supra at 518 (1), it is clear that Holt's evidence failed to establish that appellant's actions rose to the requisite level of outrageousness and egregiousness. Holt's claim accused appellant of no conduct more egregious than not acting to prevent a lawsuit from being filed and a judgment in excess of policy limits from being obtained against her. Although Holt testified she had never been sued before and that she and her husband had no assets to satisfy Fortson's judgment against her, Holt nevertheless knew she was responsible for Fortson's injuries because she admitted she caused the accident which was the basis of Fortson's suit. Holt stated she cried when her husband telephoned her in December 1987 to tell her the suit had been filed and that she was later unable to put the matter out of her mind. Holt testified she was not informed about the settlement offer and appellant's untimely response, and the transcript does not reflect when she became aware that appellant's bad faith failure to settle exposed her to a judgment in excess of her policy limits. Trial was had on Fortson's suit in July 1988, although Holt did not testify in person (a videotaped deposition was used) and within two months thereafter, Holt assigned her claim against appellant to Fortson. The only other evidence submitted was Holt's testimony that she has not driven a car since her accident with Fortson because the lawsuit made her afraid she would be sued again.

This court has held that the preparation and filing of legal pleadings is not sufficient as a matter of law to sustain a party's subsequent cause of action for intentional infliction of emotional distress against the one who had filed suit against him, *Savell, Williams, Cox & Angel v. Coddington,* 176 Ga. App. 179, 180-181 (2) (335 SE2d 436) (1985), even where the lawsuit proceeds to trial and the party is subjected to "severe cross-examination" during the proceedings. *East River Savings Bank v. Steele,* 169 Ga. App. 9 (311 SE2d 189) (1983). Based on the facts and holdings in these cases, neither the filing and litigation of Fortson's suit nor the entry of a judgment against Holt in excess of her policy limits constituted acts so outrageous or egregious that they naturally gave rise to the intense feelings of humiliation, embarrassment, fright or extreme outrage necessary to cause severe emotional distress. *Moses,* supra.

As to Holt's crying, anxiety over the trial, and her reluctance to drive, we have held that "the severity of the emotional distress allegedly produced by the defendant['s] conduct is also a factor in determining liability for mental distress. [Cit.] The law will intervene only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it. [Cit.] It is for the court to determine whether on the strength of the evidence *severe* emotional distress can be found. [Cit.]" *Quinones v. Maier & Berkele, Inc.,* 192 Ga. App. 585, 587 (1) (a) (385 SE2d 719) (1989). We find as a matter of law

that a reasonable person could have endured the degree of distress generated by the lawsuit and judgment thereon, and thus hold that Holt's alleged emotional distress did not meet the above severity requirement. See *Moses*, supra at 226.

Moreover, as an alternate basis for reversing the denial of appellant's motions for a directed verdict on the emotional distress tort, it appears that while the complaint asserted two separate torts which, had they both been proven, would have authorized recovery of compensatory and punitive damages under OCGA §§ 51-12-4; 51-12-5.1 on the bad faith failure to settle claim and also damages under OCGA § 51-12-6 on the separate claim of intentional infliction of emotional distress, the transcript reveals that no independent evidence was adduced to support Holt's claim for damages for her emotional distress but rather that she relied exclusively on the facts used to establish the claim for both compensatory and punitive damages for appellant's bad faith failure to settle within policy limits. Thus, the evidence actually presented at trial established only one tort, that of appellant's bad faith failure to settle. It follows that because the jury awarded actual damages for this tort, the "entire injury" was not exclusively to Holt's peace, happiness, or feelings, OCGA § 51-12-6, and accordingly, Holt was not entitled to recover those damages. Id.; see *Mallard v. Jenkins*, 186 Ga. App. 167, 168 (366 SE2d 775) (1988); see also *Alford v. Oliver*, 169 Ga. App. 865, 869 (7) (315 SE2d 299) (1984). Thus, the award of both punitive damages and damages for Holt's wounded feelings constituted an impermissible double recovery. See *Westview Cemetery v. Blanchard*, 234 Ga. 540 (216 SE2d 776) (1975).

Accordingly, the trial court erred by denying appellant's motions for a directed verdict on the intentional infliction of emotional distress claim.

6. Appellant contends the trial court erred by denying its motions for a directed verdict as to the punitive damages based on its tortious failure to settle within policy limits. Appellant's liability for this tort arose on November 17, 1987, the last day appellant could have accepted Gower's offer to settle Fortson's claim against Holt within the policy limits. OCGA § 51-12-5.1 applies to causes of action arising on or after July 1, 1987. Id. at (h). We note that the procedures set forth in OCGA § 51-12-5.1 (d) were not followed in the case sub judice. Compare *McClure v. Gower*, 259 Ga. 678, 684 (3) (385 SE2d 271) (1989). There is no indication in the record that either party requested that the punitive damages be bifurcated from trial of the main issue or that any objection was made to the trial court's failure to do so. However, we need not here decide whether parties can waive the requirements of OCGA § 51-12-5.1 (d) because none of appellant's enumerations of error can be construed as raising this matter, compare *Chrysler Credit Corp. v. Brown*, 198 Ga. App. 653, 656-657 (3)

(402 SE2d 753) (1991), and thus we have no jurisdiction to consider this issue. See generally *Sanders v. Hughes*, 183 Ga. App. 601, 604 (4) (359 SE2d 396) (1987).

Unlike OCGA § 51-12-5, which has been held as prohibiting juries from awarding punitive damages for the purpose of punishing a defendant, see *WHM, Inc. v. Thomas*, 260 Ga. 654, 655-656 (1) (398 SE2d 196) (1990), OCGA § 51-12-5.1 expressly authorizes a jury to award punitive damages because of aggravating circumstances "in order to penalize, punish, or deter a defendant." Id. at (a). Where, as here, compensatory damages for the tortious behavior are awarded by the jury, see *Sikes v. Foster*, 74 Ga. App. 350, 355 (39 SE2d 585) (1946), rev'd on other grounds, 202 Ga. 122 (42 SE2d 441) (1947), an award of punitive damages is authorized "in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." OCGA § 51-12-5.1 (b).

Applying that standard to the facts at hand, we hold the trial court did not err by denying appellant's motions for a directed verdict on the punitive damages. Affirmative evidence was adduced that appellant failed to accord Fortson's time-limited settlement offer any special consideration under its internal operating procedures, even though it knew or should have known that its failure to act on the offer might leave Holt personally liable for a judgment in excess of her policy limits; that appellant failed to write or even telephone Gower to seek an extension of the deadline, even though recognizing that the result of its decision to follow its internal procedures eliminated the possibility of evaluating and processing the settlement offer within the time limit; and that appellant failed to inform Holt about the suit Fortson was considering, about the documents Fortson had submitted indicating her injuries exceeded $15,000, and about the offer to settle the claim for the $15,000 policy limits, thereby depriving Holt of any opportunity she might have had to negotiate her own agreement with Fortson.

The evidence established that every aspect of appellant's conduct in this case was deliberate and intentional, and was the conscious and calculated result of appellant's decision to give greater importance to its interests in its internal operating procedures than it gave to the interests of its insureds. The evidence adduced at trial established that rather than alter its internal operating procedures to accommodate time-limited settlement offers, appellant deliberately gambled with its insureds' interests, betting their exposure to a verdict in excess of the policy limits against either the injured party's acceptance of appellant's untimely response to the settlement offer or the injured

party's inability to prove damages in excess of the policy limits at trial. By pursuing this course of action appellant had everything to gain and nothing of its own to lose: it would benefit financially if the injured party's claim proved bogus or insignificant; it would be responsible only for the policy limits if the claim proved valid. The only interests at risk in the case at bar were Holt's, whom appellant kept ignorant of the gamble it was taking with her financial future. From this evidence, the jury was authorized to conclude that appellant had acted with an entire want of care to the consequences to Holt, and that punitive damages were necessary to penalize or punish this behavior.

Further, in view of the insistent testimony by appellant's employees that appellant "met [its] legal obligations" by handling the settlement offer in a manner that placed paramount importance on its internal business operations notwithstanding the negative impact on its insureds' interests, and the evidence indicating that appellant's actions in the case at bar were not unique to Holt but reflected appellant's treatment of all similarly positioned insureds, the jury was entitled to conclude that appellant was so convinced its tortious behavior was acceptable that it would continue in its behavior unless the jury, through its verdict, could convince it otherwise. From this evidence, the jury was authorized to conclude that in order to deter appellant from continuing to act with conscious indifference to the consequences to its insureds, punitive damages were necessary.

The jury found appellant liable for $83,000 as actual damages for its tortious behavior and for $100,000 in punitive damages, an amount well within the maximum set by OCGA § 51-12-5.1 (g) and which, unlike the situation in *Colonial Pipeline Co. v. Brown*, 258 Ga. 115 (365 SE2d 827) (1988) (construing OCGA § 51-12-5), does not reflect an absence of any rational relationship between the offense and the punishment and does not meet the standard set forth in *Hospital Auth. of Gwinnett County v. Jones*, 259 Ga. 759, 766 (386 SE2d 120) (1989) to render it an unconstitutional deprivation of property. Therefore, because these damages were authorized by the evidence and OCGA § 51-12-5.1, the trial court properly denied appellant's motion. See generally *Jones v. Padgett*, 186 Ga. App. 362, 364-365 (5) (367 SE2d 88) (1988); *Bowen v. Waters*, 170 Ga. App. 65, 67 (316 SE2d 497) (1984). See also *Smoot*, supra at 338-339 (3); *Miller v. Elite Ins. Co.*, 161 Cal. Rptr. 322, 332-333 (1980).

7. Finally, appellant contends the trial court erred by denying its motion to disqualify counsel for appellees. The record reveals that appellant filed its motion the Friday before the Monday the jury trial began. The trial court found that the disqualification of Gower was not appropriate under the circumstances. We affirm.

Appellant argues that Gower's knowledge of the underlying set-

tlement negotiations made him an essential witness for his clients so that the trial court erred by not disqualifying him as counsel for Fortson and Holt in the case sub judice pursuant to certain provisions of the Georgia Code of Professional Responsibility, 252 Ga. 581 (1984). The issue raised concerns whether Gower's proper role in the case at bar was as advocate or witness, two roles which are fundamentally inconsistent. Ethical Consideration 5-9. See *Castell v. Kemp*, 254 Ga. 556 (331 SE2d 528) (1985). Directory Rule 5-102 provides that "[w]hen a lawyer is a witness for his client, except as to merely formal matters, such as the attestation or custody of an instrument and the like, he should leave the trial of the case to other counsel. Except when essential to the ends of justice, a lawyer should avoid testifying in court on behalf of his client."

"The rules of disqualification of an attorney will not be mechanically applied; rather, we should look to the facts peculiar to each case in balancing the need to ensure ethical conduct on the part of lawyers appearing before the court and other social interests, which include the litigant's right to freely chosen counsel. [Cit.]" *Stoddard v. Bd. of Tax Assessors*, 173 Ga. App. 467, 468 (1) (326 SE2d 827) (1985). The Supreme Court considered the inconsistency of an attorney serving both as witness and advocate in *Cherry v. Coast House, Ltd.*, 257 Ga. 403 (359 SE2d 904) (1987). In that case there was a "virtual certainty" that Rolleston, a party to the case as well as Cherry's attorney in her claim for tortious interference with a contract, would be called upon to testify "not only as a witness for himself because of his position as a party but also as a witness on behalf of Mrs. Cherry because he was present without his client at the closing which is at the heart of this case." Id. at 405 (3). That case presents facts in marked contrast to those present in the case sub judice, where Gower's activities were restricted to settlement negotiations conducted entirely by correspondence, where there was no question regarding the contents or authenticity of that correspondence, and where appellant had admitted receipt of the correspondence in its answer. Rather than being "crucial" to the case, id., Gower's testimony could only have added to the evidence presented through exhibits admitted at trial. "It is not objectionable for a lawyer who is a potential witness to be an advocate if it is unlikely that he will be called as a witness because his testimony would be merely cumulative." EC 5-10.

" '[T]he right to counsel is an important interest which requires that any curtailment of the client's right to counsel of choice be approached with great caution.' " *Cherry*, supra at 405 (3). We find no error in the trial court's denial of appellant's motion.

Finally, pretermitting both the issue whether the mere potential

for a violation of DR 7-106 (C) (3)[2] constitutes an appropriate basis for disqualification of counsel and the issue whether any comments by Gower could possibly be construed as violative of that directory rule, the transcript reflects that despite the trial court's explicit direction to appellant to object and demand a ruling if any comments by Gower during the trial were inappropriate, appellant failed to timely object to any specific instance where Gower allegedly violated this rule. Thus, it waived its right to contest this issue on appeal. See *Coffee v. Silver*, 195 Ga. App. 247, 248 (2) (393 SE2d 58) (1990).

*Judgment affirmed in part; reversed in part. McMurray, P. J., Banke, P. J., Pope and Cooper, JJ., concur. Beasley, J., concurs in the judgment only. Birdsong, P. J., Carley and Andrews, JJ., concur in part and dissent in part.*

CARLEY, Judge, concurring in part and dissenting in part.

I concur in Divisions 1, 2, 3, 4, 5, and 7 of the majority opinion. However, I cannot concur with Division 6 in which the majority finds no error in the trial court's denial of appellant's motions for directed verdict as to punitive damages. As noted by the majority, Holt's entitlement to punitive damages must be determined in accordance with OCGA § 51-12-5.1 because the cause of action arose after July 1, 1987. This amendment "changes the burden of proof from a preponderance of the evidence to clear and convincing evidence." Cobb & Eldrige, Ga. Law of Damages (3d ed.), § 4-1, p. 62. It is my opinion that, as a matter of law, it was not "proven by clear and convincing evidence that the [insurer's] actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." OCGA § 51-12-5.1 (b). Accordingly, the trial court erred in failing to direct a verdict as to punitive damages.

ANDREWS, Judge, concurring in part and dissenting in part.

1. I join in Divisions 1, 3, 4 and 5 of the majority opinion.

2. I respectfully dissent from the majority's conclusion in Division 2 because basic elements of Fortson's bad faith excess verdict claim were missing from this case. In order to avoid a directed verdict, basic tort law principles dictate that Fortson introduce evidence that Southern General *breached* a *duty* owed to Holt, and that such breach was the *legal cause* of *harm* to Holt. Although I agree with the majority's conclusion that Holt was harmed, I disagree with the majority's conclusion that the jury was authorized to find that a duty was breached, and that such breach was the proximate cause of Holt's

---

[2] "In appearing in his professional capacity before a tribunal, a lawyer shall not . . . assert his personal knowledge of the facts in issue, except when testifying as a witness."

harm.

From my review of the record, I do not find that there was legally sufficient evidence that Southern General breached its duty to Holt to submit this issue to a jury. The duty an insurer owes to its insured in deciding whether to accept an offer of settlement within policy coverage is to "accord the interest of its insured the same faithful consideration it gives its own interest. . . ." *Great American Ins. Co. v. Exum*, 123 Ga. App. 515, 519 (181 SE2d 704) (1971); *U. S. Fidelity &c. Co. v. Evans*, 116 Ga. App. 93 (156 SE2d 809) (1967). Here, if Southern General, either through bad faith or negligence, failed to accord the same faithful consideration to Holt's interests as it did to its own interests, Southern General would have breached its duty. See generally *Home Ins. Co. v. North River Ins. Co.*, 192 Ga. App. 551, 556 (385 SE2d 736) (1989).

Construing the evidence in favor of Fortson, the opponent of the motion for directed verdict, a jury would have been authorized to find that, as of the date of expiration of the offer, Fortson's attorney had provided information to Southern General indicating that the claim would exceed the limits of its policy coverage. The majority interprets this information as evidence of "failing to settle when the insured's liability was uncontestable." In rejecting an excess verdict claim under similar facts, the Fourth District Court of Appeals of Florida stated: "Since when does one party to a lawsuit have to accept at face value the medical information furnished by the other party without even an inquiry? The evidence here shows that appellee, its adjusters, and its counsel proceeded with all due haste to determine and evaluate their position, and they almost made plaintiff's unreasonable deadline." *DeLaune v. Liberty Mut. Ins. Co.*, 314 S2d 601 at 603 (Fla. Dist. Ct. App. 1975).

Contrary to the majority's implication, *DeLaune*, supra, did not simply uphold a jury verdict for the insurer applying an "any evidence" rule. Rather, the court held, "the evidence fails to prove any negligence, must less negligence rising to the level of bad faith. . . ." *DeLaune*, supra at 602. *DeLaune* expresses the majority, and I believe better reasoned, analysis as to arbitrary time-restricted offers. See also *Adduci v. Vigilant Ins. Co.*, 424 NE2d 645 (Ill. App. 1981); *American Mut. Ins. Co. of Boston v. Bittle*, 338 A2d 306 (Md. Ct. Spec. App. 1975); *Clauss v. Fortune Ins. Co.*, 523 S2d 1177 (Fla. Dist. Ct. App. 1988); *Baton v. Transamerica Ins. Co.*, 584 F2d 907 (9th Cir. 1978); *Bailey v. Hardware Mut. Cas. Co.*, 322 FSupp. 387 (W.D. La. 1969); but see *Andrews v. Central Surety Ins. Co.*, 271 FSupp. 814 (S.C. 1967).

The majority opinion, sub silentio, adopts a rule that an insurer is required to give the insured's interests *paramount* consideration. This rule was specifically rejected in *National Emblem Ins. Co. v.*

*Pritchard*, 140 Ga. App. 350 (231 SE2d 126) (1976).

Additionally, assuming for purposes of this decision that Southern General's failure to accept the policy limits offer prior to the close of business on November 17, 1987, would authorize a jury to find that it had, through bad faith or negligence, breached its duty to Holt *at that time*, there is no evidence that the breach was the legal cause of Holt's damage.[3]

Three days after the expiration of the policy limits offer to settle expired, Southern General offered to settle for the policy limits. This offer remained "on the table" through the entry of the verdict against Holt some seven months later. Thus, it was incumbent upon Fortson to prove that the legal cause of Holt's harm was attributable to Southern General, rather than to Fortson, or Fortson's attorney. "No facts sufficiently indicate why [Fortson] found it impossible to accept the offer at [another] time, so as to fairly place the blame for failure of settlement upon [Southern General]." *Adduci*, supra at 649.

Under the majority opinion, policy limits are meaningless in the face of a "Holt letter." I cannot agree.

3. Because of my disagreement with the majority's conclusion in Division 2, I necessarily must dissent from the majority's conclusion in Division 6.

4. In light of my conclusion regarding Division 2, I believe that attorney Gower's proper role in the case sub judice would be that of a witness, rather than of an advocate. Therefore, I respectfully dissent from Division 7 of the majority opinion.

I am authorized to state that Presiding Judge Birdsong joins in this dissent.

DECIDED JULY 16, 1991 —
RECONSIDERATION DENIED JULY 31, 1991 — ▬▬▬▬▬▬

*Freeman & Hawkins, Paul M. Hawkins, Edward M. Newsom, Michael J. Goldman*, for appellant.

*Kelly, Denney, Pease & Allison, Allen C. Levi, Charles A. Gower*, for appellees.

*Long, Weinberg, Ansley & Wheeler, Sidney F. Wheeler*, amicus curiae.

---

[3] The majority also concludes "that appellant's behavior in failing to inform Holt of the settlement offer . . . demonstrates bad faith or negligence in the refusal to settle a claim within policy limits. . . ." However, the majority fails to discuss *how* this might have contributed to Holt's harm.