Michael Josh **HULSEY**, Plaintiff,

v.

**THE TRAVELERS INDEMNITY COMPANY OF AMERICA,** Defendant.

No. CIV.A. 1:05–CV–2252–.

United States District Court, N.D. Georgia, Atlanta Division.

Nov. 2, 2006.

Miguel A. Garcia, Jr., Bullard Garcia & Wangerin Attys, Macon, GA, Thomas Charles Sinowski, Freedman & Sinowski, Atlanta, GA, for Plaintiff.

Ambadas Bhagwan Joshi, Frederick Mills Valz, III, Carlock Copeland Semler & Stair, Atlanta, GA, for Defendant.

## ORDER

BATTEN, District Judge.

### I. Background

During the early morning hours of February 12, 2001, Plaintiff Michael Josh Hulsey, then age eighteen, was operating a motor vehicle owned by Charlene McDaniel. Asleep in the backseat of the vehicle was Charity Ann McDaniel, the twenty-three-year-old daughter of Charlene McDaniel, who was the owner of the vehicle.

Hulsey lost control of and wrecked the vehicle, whereupon McDaniel was ejected and seriously injured. She suffered a fractured neck and is now a C–5 quadriplegic.

Hulsey fled from the scene of the accident. He was subsequently charged with leaving the scene of an accident, driving too fast for conditions, driving on a suspended license, reckless driving, causing serious injury by vehicle, and driving under the influence of marijuana and alcohol. He pled guilty to all of the charges and was sentenced to ten years in prison.

On December 11, 2002, Charity McDaniel sued Hulsey in the State Court of Clayton County for the personal injuries that she sustained in the accident.

On November 12, 2004, judgment on a jury verdict was entered in Charity's favor and against Hulsey in the amount of $2,195,250.

At the time of the accident, the vehicle was insured by Defendant Travelers, which had issued a liability policy to Charlene McDaniel. The policy limits for liability coverage was $250,000.

On August 23, 2001, Charity McDaniel's counsel delivered a letter to Travelers demanding that it pay the $250,000 policy limits within thirty days. The demand letter was accompanied by copies of Charity's medical records and bills from the accident totaling over $229,000. Travelers did not honor the demand.

Travelers defended Hulsey in McDaniel's suit against him, and six weeks after the judgment was entered against Hulsey it paid McDaniel the $250,000 policy limits, reducing the principal amount of the judgment against Hulsey from $2,195,250 to $1,945,250.

On August 1, 2005, Hulsey filed this action against Travelers, contending that it negligently and/or in bad faith refused to honor McDaniel's demand for the policy limits and that as a result, Travelers should be held liable for the excess judgment. Hulsey also contends that he should be awarded punitive damages against Travelers.

The case is now before the Court on cross-motions for summary judgment. For the following reasons, the Court denies both motions.

## II. Discussion

### A. The *Holt* Decision

*Southern General Insurance Co. v. Holt*, 262 Ga. 267, 416 S.E.2d 274 (1992), is the seminal case in Georgia addressing an insurer's liability for failing to settle a claim within the policy limits when faced with a time-limited settlement demand. Therefore, in determining whether summary judgment is appropriate, the central question is whether this case fits within the parameters of *Holt*.

The facts in *Holt* were straightforward. Holt drove her vehicle through a stop sign and collided with a vehicle driven by Fortson, who was injured. Liability was undisputed because Holt was clearly at fault.

Following the collision, Fortson's counsel wrote Holt's insurance company, Southern General, offering to settle Fortson's claim for the $15,000 policy limits within ten days. Southern General did not seek more time to evaluate the offer, nor did it respond to the offer before it expired.

Fortson's counsel then withdrew the offer, the case went to trial, and the jury returned an $82,000 verdict against Holt. Thereafter, Holt assigned to Fortson her claim against Southern General for negligent or bad faith refusal to settle. Fortson then sued Southern General, contending that it was liable for the $67,000 excess judgment because of its refusal to accept Fortson's offer to settle within the policy limits. The jury found in favor of Fortson.

The Georgia Court of Appeals affirmed the judgment, and the case went to the Georgia Supreme Court on writ of certiorari. Southern General argued that the trial court erred in denying its motion for directed verdict because it did not breach any duty in failing to settle Fortson's claim within the policy limits. The supreme court affirmed the court of appeals and held that the trial court correctly allowed the jury to decide whether Southern General had negligently or in bad faith refused to settle.

The supreme court held that an insurance company "may be liable for damages to its insured for failing to settle the claim of an injured person where the insurer is guilty of negligence, fraud, or bad faith in failing to compromise the claim." *Id.* at 268, 416 S.E.2d at 276. In making the determination of whether to settle a claim within the policy limits, "the insurance company must give equal consideration to the interests of the insured." *Id.* "The jury generally must decide whether the insurer, in view of the existing circumstances, has accorded the insured 'the same faithful consideration it gives its own interest.'" *Id.* at 268–69, 416 S.E.2d at 276 (quoting *Great Am. Ins. Co. v. Exum*, 123 Ga.App. 515, 519, 181 S.E.2d 704, 707 (1971)).

The court also noted, however, that an insurer "does not act in bad faith solely because it fails to accept a settlement offer within the deadline set by the injured person's attorney." *Id.* at 269, 416 S.E.2d at 276. Nevertheless, the court made it clear that bad faith may be found *"when the company has knowledge of clear liability and special damages exceeding the policy limits."* *Id.* The court further explained that "the issue is whether all the facts show sufficient evidence to ... permit a jury to determine whether the insurer acted unreasonably in declining to accept a time-limited settlement offer." *Id.*

### B. Applying *Holt*

■ As in *Holt*, the insurance company (Travelers) knew at the time of the offer to

settle that the insured (Hulsey) was liable for the third party victim's (McDaniel's) injuries and that her damages exceeded the policy limits.

There is, however, a distinction between this case and *Holt.* In that case, there was no question that Holt was covered as an insured under the policy issued by Southern General. By contrast, Travelers argues that it did not accept McDaniel's demand because it needed more time to investigate whether Hulsey was an insured under the policy. Specifically, Travelers contends that at the time it received McDaniel's settlement demand and through the time it expired, a genuine question existed as to whether Hulsey was a "permissive driver," thereby entitling him to coverage.[1]

After a careful review of the parties' briefs and the record evidence, the Court finds that although Hulsey is not entitled to summary judgment, he has adduced sufficient evidence to permit a reasonable jury to find that Travelers either knew or through the exercise of ordinary care should have known that he was a permissive driver prior to the expiration of McDaniel's time-limited settlement demand. While it is true that *Holt* is distinguishable, both parties recognize that the core principle upon which *Holt* is based—an insurer's duty to give equal consideration to the interests of the insured—applies here. And on the record before the Court, Hulsey has tendered sufficient evidence to permit a reasonable jury to find that Travelers failed to give equal consideration to his interests by failing to settle this case within the policy limits.

In this regard, the Court highlights the following undisputed facts.

The accident occurred on February 12, 2001. By March 8, 2001, Travelers had received a copy of the police report, which identified Hulsey as the driver and listed his telephone number, address, driver's license number, and date of birth. The report also stated that Charity McDaniel suffered severe injuries, including paralysis. Consequently, as early as March 8, 2001, Travelers knew that McDaniel's injuries were severe and that Hulsey was the driver, and Travelers had in its possession information that could lead to his whereabouts. Based on this information alone, Michael Romanko, who is employed by Travelers in its major case unit and who began working on the claim on September 12, 2001, testified in his deposition that had he been handling the claim from the outset, he would have immediately recognized that Charity McDaniel was likely to assert a bodily injury claim against Hulsey.

On July 26, 2001, McDaniel's counsel formally notified Travelers that McDaniel intended to pursue a bodily injury claim against Hulsey *and* that McDaniel contended that Hulsey was covered by Travelers' policy.

On August 22, 2001, a log note from Travelers' computer records reveals that one of its claims adjusters who was assigned to handle McDaniel's claim, Martha Desieno, expressed to another employee her opinion that Hulsey was a permissive driver under the policy: "[Desieno] feels Joshua had implied permission to drive the car."

That same day, Travelers' Alpharetta, Georgia, office, which had been handling the claim, transferred McDaniel's file to Romanko with the major case unit in Hartford, Connecticut.

On August 23, 2001, McDaniel's counsel delivered the thirty-day demand letter to Travelers, offering to settle McDaniel's

---

1. Under the terms of the policy, a permissive driver is a person who operates a motor vehicle with a reasonable belief that he is entitled to do so.

claim for the policy limits. Enclosed with the letter were copies of McDaniel's medical records detailing over $229,000 in expenses.

It was not until September 12, 2001 that Travelers took any action in response to McDaniel's demand. On September 12, Romanko first discussed the file with McDaniel's counsel. McDaniel's counsel restated the demand for the policy limits, but Romanko responded that he needed more time to investigate whether Hulsey was a permissive driver.

For some reason, Travelers made no attempt to begin locating Hulsey until September 13, 2001. That day, Romanko hired Tom Magill, an attorney in Atlanta, to investigate whether Hulsey was a permissive driver. By that point, only nine days remained on McDaniel's offer to settle.

A computer log note dated September 13, 2001, reveals that Romanko believed that Travelers was on "the short end of the argument" with respect to the issue of permissive use. Additionally, in a letter that same day, Romanko expressed to Magill concern regarding Travelers' handling of the investigation:

> I'm concerned about the facts surrounding the permissive use of her mother's vehicle prior to the accident. As I mentioned, our Alpharetta office had this file since Feb 2001 and handled the collision claim. They knew Ms. McDaniel was a quad, but never referred this out for additional investigation.

On September 19, 2001, Magill faxed a letter to McDaniel's counsel, stating that Travelers needed more time to investigate whether Hulsey was an insured and would not be able to respond within the time limit set forth in the letter.

On September 22, 2001, McDaniel's settlement offer expired.

The foregoing facts reveal that while there may have been some question during the pendency of McDaniel's settlement demand as to whether Hulsey was a permissive driver, substantial evidence existed that Hulsey was a permissive driver, and several of Travelers' representatives believed that Hulsey probably was a permissive driver.

Additionally, in light of the fact that the demand letter was received on August 23 but Romanko waited until September 12 to discuss the claim with McDaniel's counsel, Hulsey has adduced evidence that would permit a jury to find that Travelers could have completed its investigation within the thirty-day window had it handled the matter more diligently. Notably, once Magill's office began looking for Hulsey (on September 25, after the settlement offer had expired), it took only seven days to locate and interview him—at the Clayton County jail.

The Court recognizes that an insurer has a right to investigate any claim and is not necessarily bound to complete its investigation within a time frame prescribed by a third-party claimant. The law does require, however, that in conducting its investigation the insurer accord the interest of its insured "the same faithful consideration it gives its own interest." *Holt,* 262 Ga. at 268–69, 416 S.E.2d at 276. Indeed, the court of appeals in *Holt* cautioned that "an insurer cannot justify its failure to give equal consideration to its insureds' interests by relying on internal operating procedures" when those procedures prevent an insurer from giving the settlement offer faithful consideration. *Holt,* 200 Ga.App. 759, 409 S.E.2d 852, 857 (1991).

The following statement by the court of appeals in *Holt* is also instructive:

> Although there may be situations in which, given the valid business concerns

of the ordinary prudent insurer, the time restriction in a settlement offer may be so unreasonable under the circumstances of the claim that as a matter of law an insurer could not appropriately consider it, *a determination of the reasonableness or unreasonableness of the time in the offer will usually be a question for the trier of fact.*

*Id.* at 856–57 (emphasis added). Under the circumstances of this case, the Court cannot conclude that as a matter of law (1) thirty days was an unreasonably short amount of time for Travelers to investigate and evaluate McDaniel's settlement demand, or (2) Travelers acted as an ordinarily prudent insurer and accorded Hulsey's interest the same faithful consideration it gave its own interest. A reasonable jury could find that Travelers either knew or should have known that Hulsey was a permissive driver prior to the expiration of the thirty-day period and did not act reasonably in failing to settle this case within the policy limits. *See Cotton States Mut. Ins. Co. v. Brightman,* 276 Ga. 683, 685, 580 S.E.2d 519, 521 (2003) ("Judged by the standard of the ordinarily prudent insurer, the insurer is negligent in failing to settle if the ordinarily prudent insurer would consider choosing to try the case created an unreasonable risk"). For all of these reasons, Travelers' motion for summary judgment must be denied.[2]

▮ The Court does, however, grant Travelers' motion for partial summary judgment on the issue of punitive damages. Under Georgia law, "[p]unitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences." O.C.G.A. § 51–12–5.1(b) (Westlaw 2006). Although a reasonable jury may find that Travelers was negligent in failing to timely accept McDaniel's settlement demand, Hulsey has failed to adduce clear and convincing evidence that Travelers' actions showed "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences." Thus, Hulsey's claim for punitive damages fails as a matter of law. *Accord Taylor v. Powertel, Inc.,* 250 Ga.App. 356, 357, 551 S.E.2d 765, 768 (2001) (granting summary judgment on issue of punitive damages where plaintiff failed to proffer clear and convincing evidence of conduct that would authorize an award of such damages).

Finally, the Court denies Travelers' motion for partial summary judgment on the issue of post-judgment interest. In addition to the principal amount of the excess judgment, Hulsey contends that he has incurred liability for interest on the judgment.[3] Travelers argues that *Southern General Insurance Co. v. Ross,* 227 Ga. App. 191, 489 S.E.2d 53 (1997), bars Hulsey's attempt to recover post-judgment interest. The Court has reviewed *Ross* and finds that it is inapposite. Contrary to Travelers' description of *Ross,* that case did not hold that in a case involving negligent or bad faith refusal to settle, the duty to pay interest abates at the time when an

2. The Court also denies Hulsey's motion for summary judgment. Although Hulsey has proffered sufficient evidence from which a jury could find that Travelers negligently or in bad faith refused to settle within the policy limits, the evidence does not compel the conclusion that Travelers is liable as a matter of law.

3. As of the date of McDaniel's judgment against Hulsey, the statute governing post-judgment interest, O.C.G.A. § 7–4–12, provided for a rate of twelve percent per annum.

insurer tenders its policy limits. Accordingly, Hulsey is not barred from recovering post-judgment interest.

For the foregoing reasons, the Court **DENIES** Plaintiff's motion for summary judgment [72] and **GRANTS IN PART AND DENIES IN PART** Defendant's motion for summary judgment [88]. The Court also **DENIES** Plaintiff's motion for permission to file a sur-reply brief [114].

The parties are directed to file the pretrial order within thirty days.